Ray SCOTT, Director, Arkansas Department of Human Services, et al. *v.* CONSOLIDATED HEALTH MANAGEMENT, INC.

88-192                                        764 S.W.2d 434

Supreme Court of Arkansas
Opinion delivered February 13, 1989
[Rehearing denied March 13, 1989.]

*Breck G. Hopkins* and *Richard B. Dahlgren,* Department of Human Services, Office of General Counsel, for appellant.

*Perroni, Rauls & Looney, P.A.,* by: *Stanley D. Rauls,* for appellee.

DAVID NEWBERN, Justice. This is an appeal from the issuance of a writ of mandamus. The appellee, Consolidated Health Management, Inc. (CHM), sought the writ requiring the appellant, Ray Scott, Director of Arkansas Department of Human Services (DHS), to review CHM's application for a license to add beds to its nursing facility. The trial court was correct in ordering that the application be reviewed.

Prior to enactment of Act 593 of 1987, a "certificate of

necessity," issued by the State Health Planning and Development Agency, was required by law for submission with an application to the Office of Long Term Care Facilities Advisory Board (the board) for construction or enlargement of a nursing home. Act 593 abolished the requirement that there be a certificate of necessity for construction or enlargement costing less than $500,000 capital expenditure. The requirement was reinstated by Act 40 of the 1987 First Extraordinary Session of the Arkansas General Assembly, although the document required was renamed "permit of approval."

The trial court found that after Act 593 became effective and before June 19, 1987, the effective date of Act 40, CHM representatives attempted to deliver a license application to the board, but they were not allowed to file it because it was unaccompanied by a permit of approval. The application, which was for a less-than-$500,000 expansion, thus has not been reviewed by the board, and CHM has no application on file with that office.

In the order to DHS, which is the parent agency of the board, the circuit court instructed that the application be reviewed "under applicable laws and regulations in effect at the time the application was originally submitted." DHS has appealed the order on three grounds. First, it is contended that the court lacked jurisdiction because CHM had not pursued its administrative remedies. Second, the court erred in holding that the requirements of Act 40 were not to be applied. Third, it is argued that the decision is clearly against the preponderance of the evidence.

## 1. Jurisdiction
### a. Discretion

In its brief, DHS contended that the decision whether to grant a license to permit expansion of a nursing home is one involving the exercise of discretion by a state office or official and, therefore, mandamus would be inappropriate. During oral argument it became clear that the court's order did not direct the issuance of a license and that CHM was not contending that the order should be so construed.

### b. Other remedy

DHS argues that mandamus is not available where another, in this case administrative, remedy is available. *Department of Human Services* v. *M.D.M. Corp.*, 295 Ark. 549, 750 S.W.2d 57 (1988).

■ We dismiss this argument because, according to the facts found by the trial court, DHS, by rejecting the application out of hand, has denied CHM the very administrative remedy the agency contends is available. No review has occurred. There is no "decision" of record from which CHM could appeal.

### 2. Applicable law

In addition to reestablishing the requirement that a permit of approval accompany a nursing home license application such as the one submitted by CHM, Act 40 established a moratorium on all nursing home licensing for a period of up to two years. In *Arkansas Dept. of Human Services* v. *Greene Acres Nursing Homes, Inc.*, 296 Ark. 475, 757 S.W.2d 563 (1988), we held that an application submitted prior to the effective date of Act 40 was subject to the moratorium. However, we also wrote: "Since appellee submitted its application during the effective dates of Act 593, it qualified for the exception to the permit of approval requirement."

■ Generally, legislation operates prospectively. *Abrego* v. *United Peoples Fed. Sav. & Loan Assn.*, 281 Ark. 308, 664 S.W.2d 858 (1984). Act 40 provided it was to be effective "from and after its passage and approval," thus its effect is not retroactive. *Lucas* v. *Hancock*, 266 Ark. 142, 583 S.W.2d 491 (1979). In the *Abrego* case, we quoted from *United States* v. *Security Industrial Bank*, 459 U.S. 70 (1982), where the Supreme Court wrote that retrospective application of a statute will not occur unless it is "the unequivocal and inflexible import of the terms, and the manifest intention of the legislature."

■ When, in *Arkansas Dept. of Human Services* v. *Greene Acres Nursing Homes, Inc., supra*, we wrote that the licensing moratorium applied with respect to an application submitted during the time Act 593 was in effect but that the permit of approval requirement did not, our ruling was consistent with the language quoted from *United States* v. *Security Industrial Bank*,

*supra.* The legislative intent of Act 40 that there be a prospective moratorium on all licensing was clear. The reinstatement of the permit of approval requirement was also prospective, but it was not clearly intended to apply to applications which had been submitted while Act 593 was in effect.

It would be unfair to CHM to hold that the application it attempted to submit during the effective dates of Act 593 was subject to the permit of approval requirement while other applications accepted for review during that time were not.

### 3. The evidence

▪ DHS points out that CHM presented, at the trial, neither a copy of the application it contends it attempted to submit nor a copy of the check allegedly tendered with the application. While inclusion of these items in evidence might have strengthened CHM's case, we know of no authority holding that they were essential to it. The judge believed the testimony of the witnesses for CHM who testified the application was presented in the Office of Long Term Care Advisory Board and that they were informed that it could not be accepted absent a permit of approval. We cannot say this finding of fact was clearly erroneous. Ark. R. Civ. P. 52(a); *Cude* v. *Cude*, 286 Ark. 383, 691 S.W.2d 866 (1985); *Johnson* v. *Truck Ins. Exch.*, 285 Ark. 470, 688 S.W.2d 728 (1985).

Affirmed.

HAYS and GLAZE, JJ., dissent.

TOM GLAZE, Justice, dissenting. Because I view our decision today as being in conflict with our recent holding in *Arkansas Dep't of Human Services* v. *Greene Acres Nursing Homes*, 296 Ark. 475, 757 S.W.2d 563 (1988), I must dissent.

As I understand the majority opinion, the court holds that appellee, Consolidated Health Management, Inc. (CHM), is entitled to a writ of mandamus to compel the Arkansas Department of Human Services (DHS) to review CHM's application to add beds to its nursing facility pursuant to Act 593 of 1987. Act 593, which was effective when CHM submitted its application, abolished any requirement that a nursing home, such as CHM, must obtain a "permit of approval" before the commencement of

the construction or enlargement of its facilities.[1] That permit-of-approval requirement, as noted in the majority opinion, was reinstated with the passage of Act 40 of 1987, First Extraordinary Session of the General Assembly, whereby the Act imposed a moratorium on all requests for additional beds. The moratorium began on June 19, 1987, the effective date of Act 40, and is to end on June 1, 1989.

In its opinion, the majority court acknowledges the foregoing facts and concludes that the reinstatement of the permit requirement under Act 40 was prospective and was not intended to apply to applications submitted when Act 593 was in effect. The court then affirms the trial court's decision that requires DHS to afford CHM a review under Act 593.

Try as I may, I cannot reconcile today's decision with this court's ruling in *Greene Acres*, where we *reversed* the trial court's holding that Act 40 did not apply to applications filed by nursing homes during the time Act 593 was in effect. This court related the following reason for concluding as it did:

> Since appellee submitted its application during the effective dates of Act 593, it qualified for the exception to the permit of approval requirement. *However, even if its application for a license was complete under Act 593 for purposes of processing and review, a license for that application still had not been granted prior to the effective date of Act 40. The clear language of Act 40 prohibits the issuance of licenses during the effective dates of the moratorium. The fact that Act 40 results in the denial of licenses with respect to applications submitted prior to its enactment does not mean that it is being applied retroactively. Rather, Act 40 is being applied from and after its effective date of June 19, 1987, to impose the legislatively mandated moratorium.*

*Greene Acres*, 296 Ark. at 478-79, 757 S.W.2d at 565 (emphasis added).

---

[1] Act 593 covered construction or enlargement costing less than $500,000 in capital expenditures. CHM's proposed construction met this limit requirement.

As I read *Greene Acres*, the court's decision is clear. Unless CHM (or other nursing homes) actually received its license for additional beds prior to the effective date of Act 40, it is entitled to a review under the terms of Act 40, not Act 593. Unless the court chooses to reverse itself, I feel bound by what the court held in *Greene Acres*. Therefore, I dissent.

HAYS, J., joins this dissent.