McEUEN BURIAL ASS'N, et al. *v.* ARKANSAS
BURIAL ASSOCIATION BOARD

89-9                                      769 S.W.2d 415

Supreme Court of Arkansas
Opinion delivered May 8, 1989

*Davidson, Horne & Hollingsworth, A Professional Association,* by: *Allan W. Horne* and *Patrick E. Hollingsworth,* for appellant.

*Steve Clark*, Att'y Gen., by: *R.B. Friedlander*, Solicitor General, for appellee.

JOHN I. PURTLE, Justice. After a hearing, the trial court dismissed the appellants' complaint in an action to obtain a declaratory judgment relating to certain rules promulgated by the Arkansas Burial Association Board. The trial court held that no justiciable issue was presented. The appellants argue: (1) that the rules in question are invalid because they fail to insure the financial integrity of all burial associations and (2) that the court erred in holding that there was no justiciable issue. We agree that the trial court erred in finding no justiciable issue, and we reverse and remand the case for further proceedings.

Burial associations originated in Arkansas in the 1930's as a result of the economic distress of the Great Depression. They are non-profit mutual benefit societies which are authorized by Ark. Code Ann. § 23-78-101 (1987). The purpose of the associations is to "defray all or a part of the funeral expenses of its members." The Arkansas Burial Association Board is the governing body for these societies.

Over the years, membership in burial associations has steadily declined and burial costs have constantly increased. By 1987, over 100 of the state's 164 burial associations were insolvent. The 1987 report of the association reflects that 58 of the association members showed losses from their operations during the year.

The General Assembly, in recognition of the precarious situation of many of the associations, addressed the problem through the enactment of corrective legislation. Act 443 of 1987, Ark. Code Ann. §§ 23-78-108, 112, and 122 (Supp. 1987), mandated that the Board "establish actuarial rates and reserve requirements necessary to ensure the financial integrity of all burial associations." This legislation also authorized the burial associations to increase their previous benefit limits from $500 to

$2500 and to adjust their rates accordingly. Another sweeping feature of the act was that it required the burial associations to pay 100 percent of the amount of liability to any funeral home or mortuary service conducting the funeral of a member. Previously, if the burial services were provided by a funeral home not owned by an association, the burial association paid only 80 percent of the face value of the certificate.

In response to Act 443 of 1987, the Board amended its Rule 18 to establish new minimum rates and added Rules 38, 39, and 40. Rule 38 requires each association to maintain a minimum amount of funds or assets on "deposit," based on the number of members and the maximum amount the association desires to write. Burial associations are prohibited by these rules from writing new business without first complying with the deposit requirements. Rule 39 directs burial associations issuing new certificates to comply with the requirements of the rules before writing new business. In order to write new business, each association is required to submit an application for authorization to the Executive Secretary of the Board, who in turn is required to issue a certificate if the association "has sufficient funds on deposit and is sound enough to issue certificates of membership in the amount requested per member." Rule 40 concerns matters of compliance with the guidelines and the application forms to be completed by the burial associations.

The appellants filed a declaratory judgment action in which they sought to have the new rules declared invalid because the rules failed to insure the integrity of all burial associations as required by Ark. Code Ann. § 23-78-108(a)(7). One of the arguments in the complaint was that the regulations applied only to new business to be written and did not make any provisions pertaining to the solvency of the associations already in existence. Furthermore, the complaint continued, the mixing of the new and old funds would not result in achieving the sound fiscal condition required by Act 443.

After a trial, the court dismissed the complaint on the grounds that no justiciable issue had been presented. Specifically, the court based its ruling on the grounds that no association had been denied a certificate and no member had been denied benefits.

During the trial, one witness, Harry Leggett, testified that: "From the standpoint of my own burial associations, the effect of these rules has been that I have just discontinued writing them [new business]." He further stated that he objected to the new rules primarily because there was a mixing of the old funds and the new funds in a common fund. It was his opinion that this would result not only in the failure to bring the insolvent associations up to an acceptable standard, but would serve to pull the new organizations down from the beginning.

Sheldon Madden was a party plaintiff and a duly qualified member as well as secretary of the McEuen Burial Association, and he made it apparent that he too was affected by the new rules and regulations. Several other witnesses testified that, with the commingling of new funds and old funds, there is a substantial likelihood that all the organizations will be weakened and that some associations will be unable to meet their obligations. The trial court itself seemed to imply that the requirements of the new rules would substantially weaken the structure of the new businesses if the funds were mingled.

The appellants challenged the rules pursuant to the Administrative Procedure Act, which provides in part:

> The validity or applicability of a rule may be determined in an action for declaratory judgment if it is alleged that the rule, or its threatened application, injures or threatens to injure the plaintiff in his person, business, or property.

Ark. Code Ann. § 25-15-207(a) (1987). The words of this section of the act clearly establish that it is not necessary that the injury already have occurred or that a person show he was affected by it in order to obtain a declaratory judgment. Either the "threatened application" of a rule or the threat of injury will justify a party in seeking to have such regulations reviewed.

Although there had been no denial of a certificate to any burial association, it is obvious that some of the associations, as a result of the application of the rules, are threatened with denial. Furthermore, Harry Leggett testified that two burial associations he had been connected with had ceased operations because of the new regulations. Pursuant to Ark. Code Ann. § 25-15-207(a), an action for declaratory judgment is a proper method

for testing the validity of rules which, in the plaintiff's view, threaten future damage. Such an action may be brought in the circuit court of any county in which the plaintiff resides or does business, or in the circuit court of Pulaski County. A declaratory judgment may be maintained even if the plaintiff has not requested the agency to rule upon the validity of the rule or regulation in question. See Ark. Code Ann. § 25-15-207(d).

██ Proceedings under the Administrative Procedures Act are exceptions to the Rules of Civil Procedure so far as Rule 81(a) is concerned. *Whitlock, Commissioner* v. *G.P.W. Nursing Home, Inc.*, 283 Ark. 158, 672 S.W.2d 48 (1984). Although we do not review administrative agency decisions de novo, we look to see if there was substantial evidence to support the action taken by the agency, and if so, we must affirm. *Arkansas Real Estate Commission* v. *Harrison*, 266 Ark. 339, 585 S.W.2d 34 (1979). See also *Partlow* v. *Arkansas State Police Commission*, 271 Ark. 351, 609 S.W.2d 23 (1980).

Both the General Assembly and the Arkansas Burial Association Board have recognized the desperate financial circumstances under which many burial associations now operate and the need for immediate action in the regulation of burial associations. A matter of such importance should be granted a full hearing and proper consideration by the courts.

██ We hold that the facts presented to the trial court presented justiciable issues. The case is remanded to the trial court with directions to proceed in a manner not inconsistent with this opinion. The court is not prohibited from reopening the case for further development of facts if its deems it necessary in order to make a more intelligent and informed decision on the issue presented.

Reversed and remanded.