ARKANSAS BURIAL ASSOCIATION BOARD *v.*
McEUEN BURIAL ASSOCIATION and Sheldon Madden

89-342                                                  788 S.W.2d 234

Supreme Court of Arkansas
Opinion delivered April 23, 1990

*Steve Clark*, Att'y Gen., by: *Frank J. Wills III*, Asst. Att'y
Gen., for appellant.

*Davidson, Horne & Hollingsworth, A Professional Associ-
ation*, by: *Allan W. Horne* and *Patrick E. Hollingsworth*, for
appellees.

DAVID NEWBERN, Justice. The Arkansas Burial Association
Board appeals a decision of the circuit court which held invalid
certain rules promulgated by the board. The declaratory judg-

ment action was brought by the McEuen Burial Association, an association governed by the board, and Sheldon Madden, a member of the McEuen association. In an earlier opinion we held that the trial court erred in dismissing the action for lack of a justiciable issue. *McEuen Burial Ass'n* v. *Arkansas Burial Ass'n Board*, 298 Ark. 572, 769 S.W.2d 415 (1989). We find no error in the trial court's conclusion that the rules are invalid because they do not accomplish the purpose of the legislation pursuant to which they were adopted and are, in fact, contrary to it.

Burial associations were created primarily in the 1930's to help people pay the costs of funerals. An association sells a certificate entitling the holder to a certain amount of credit toward the cost of a funeral. Each association apparently contracts with a single funeral home which honors that association's certificates. Although it is not expressed in the record before us, it is obvious that the idea behind these associations is that the money assessed the members will be on hand to be invested, and the investment earnings can be used to defray the members' funeral expenses. Each member's assessments will presumably amount to less than the value of the certificate.

In 1953 the general assembly undertook to regulate burial associations with the enactment of Act 91 of 1953, now codified, as amended, as Ark. Code Ann. §§ 23-78-101 through 23-78-125 (1987 and Supp. 1989). The act created a burial association board, § 23-78-105, with the power to prescribe minimum assessments or dues for certificates issued in specified amounts, § 23-78-103(a)(3), and the power to adopt regulations and rules applicable to the associations, § 23-78-108(a)(6). It was provided that no certificate could be issued for benefits in excess of $500.

Nothing in Act 91 provided or required that burial associations be solvent or sound in an actuarial sense. Apparently the associations were allowed to operate without official regard to whether the money would always be in hand to honor outstanding certificates. The evidence taken in the hearing in this case indicates that many of the associations are technically insolvent. On the other hand, there was testimony that no certificate has ever been dishonored, the reason being that the funeral homes regard the associations with which they contract as means of marketing their services. Their practice has been to "discount"

funerals to their burial association members so that the certificates are ostensibly honored in every case.

The general assembly took a new approach in Act 443 of 1987. The board was given authority to "[e]stablish actuarial rates and reserve requirements necessary to insure the financial integrity of all burial associations." § 23-78-108(7). The maximum certificate amount was raised to $2,500, § 23-78-112(a), and it was provided that, "[i]f other than the contract funeral home performs the funeral service, the benefit shall be paid to that licensed funeral home on the basis of one hundred percent (100%) of the face amount of the certificate, in cash." § 23-78-112(b). Previously, it had been eighty percent.

Pursuant to these changes in the law, the board made changes in its rules. They appear in an exhibit presented by the McEuen Association and Mr. Madden. It amended its Rule 18 to set new assessment rates. It enacted a new Rule 36 to provide:

> On or after the effective date of this rule, any association not having sufficient deposits as set forth by the Arkansas Burial Association Board and who wishes to continue writing certificates of membership must deposit the amount of funds into the Association's account to bring it into compliance with this rule. At which time the deposit becomes sufficient to meet the requirements, the initially deposited funds may be withdrawn if approved by the Burial Association Board.

> Until such time that an association has met the deposit requirements and no amount is being written off, no operating expenses can be taken from the burial association and the association must pay its contract funeral home 50% of the face value of the certificate.

> The amount of deposit required would be based on the number of members and the maximum amount the operator wants to write. That amount must be maintained at all times.

> The chart below shows how much deposit would be required under those guidelines.

|  | Policy Limit $500 | Policy Limit $1,500 | Policy Limit $1,500 & Up |
|---|---|---|---|
| 1-1,000 members | 2,500 | 10,000 | 20,000 |
| 1,001-2,500 members | 5,000 | 20,000 | 30,000 |
| 2,501-5,000 members | 7,500 | 30,000 | 40,000 |
| 5,001 & Up | 10,000 | 40,000 | 50,000 |

All burial association memberships written on or after the effective date of this rule shall be reserved on the basis of an actuarial reserve table as attached.

A new Rule 39 is as follows:

All burial associations desiring to issue certificates of membership shall comply with Board requirements concerning reserve requirements, minimum rates, and underwriting guidelines. Prior to issuing certificates after the adoption of this rule, the local burial association shall submit an application for authorization to the Executive Secretary on a form as prescribed by the Board. If the Executive Secretary determines that the application is in order and that the association has sufficient funds on deposit and is sound enough to issue certificates of membership in the amount requested per member, he shall issue a Certificate of Authority to issue certificates of benefits in the amounts requested. If the Executive Secretary denies the application, the burial association may appeal his decision to the Board.

A new Rule 40 merely provided for a new application form to be used for each burial association member and required compliance by each association with "the underwriting guidelines established by the Burial Association Board."

The circuit court found the amendment to Rule 18 invalid because the

rates and reserves established by Rule 18, while arguably sufficient for the writing of new certificates, are demonstrably inadequate to create and maintain reserves to assure the solvency of both the associations' new certificates ('new business') and existing certificates ('old business'). It is impermissible for the Board to permit the comingling of funds of old business and new business without establishing adequate rates and reserves to assure the solvency of the associations with respect to both classes of business.

Similarly, the court held the new Rule 38 invalid because it permits the assets an association has on hand as the result of "old business" to constitute all or part of the "deposit" to be required with respect to certificates written pursuant to the new rules and the expanded limit. The court remarked that a "deposit" is a fund to be segregated, apparently meaning that deposits meant to assure availability of funds for new certificates should not, in any part, come from the assets on hand resulting from prior certificate sales.

Rule 39 was held void because of its failure to set standards to be applied by the executive secretary of the board in determining the soundness of an association seeking authority to issue certificates.

Rule 40 was not invalidated, but the court stated that the rule was ambiguous, and the board should reconsider it.

In consideration and preparation of its new rules, the board consulted Joseph A. Krenz, a consulting actuary. Mr. Krenz made it clear in his testimony at the hearing in this case that the tables he proposed to the board were designed to assure soundness of the associations with respect to certificates issued under the new rules. He said the reserves to be established under the new rules would not support claims with respect to the old certificates.

The McEuen Association and Mr. Madden presented the testimony of Mr. Joe Musgrove, also a consulting actuary, who described the actuarily poor condition of many of the associations and pointed out that "something extraordinary" would have to happen to make the associations financially sound and that the board's rules would not accomplish that purpose.

### 1. The standard of review

The board argues there was no showing that the new rules are arbitrary and capricious, an abuse of discretion, or contrary to law, and that absent such a showing, it is error to hold them invalid, citing *Department of Human Services v. Berry*, 297 Ark. 607, 764 S.W.2d 437 (1989). The McEuen Association and Mr. Madden argue there is no need to consider whether the rules are arbitrary and capricious because, to be valid, they must implement the purpose of the legislation authorizing them, and we need not consider whether they are arbitrary and capricious if they fail the implementation test.

We agree that an administrative agency's rules must implement the purpose of the legislation pursuant to which they are made. Reviewing regulations of the Department of Transportation, the Supreme Court pointed out that even the arbitrary and capricious standard should be expanded to include a situation where the agency had, "relied on factors which Congress had not intended . . . [or] entirely failed to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Automobile Ins. Co.,* 463 U.S. 29, 43 (1983).

If Act 443 had required the board to enact rules which would immediately make Arkansas burial associations actuarily sound with respect to all past and future business, it would have required the impossible. The testimony before the court made it clear that only a large infusion of money could have done that, and the general assembly did not provide it. The act gave the board the authority to "[e]stablish actuarial rates and reserve requirements necessary to insure the financial integrity of all burial associations." We will discuss the trial court's evaluation of the rules in the light of the legislative purpose behind their adoption.

### 2. Rule 18

The amendment to this rule did no more than set new assessment or dues rates for association members. However, it was made clear in the testimony of the executive secretary to the board that the board had decided that the money to be collected on new business under the new rule could be used to pay certificates issued before the new rules came into effect. That obviously prompted the trial court to hold that the new rates were

not a step toward financial integrity of the associations. We must agree. The rates to be charged on new certificates were adopted on the recommendation of Mr. Krenz who did not consider that the money collected would be used to honor the old certificates.

### 3. Rule 38

We must also agree that there is nothing in this rule to prevent an association from using whatever assets it may have had on hand at the time the new rules came into effect as its "deposit" or reserve for claims written under the new rules and up to the new limit. The deposit requirement was based on the new rules and the new certificate value limit, and it was intended to create a reserve for certificates written after the new rules and limit came into effect. The financial integrity the deposit was intended to create for new business is jeopardized by comingling the reserve for old claims. Mr. Krenz testified he advised the board not to allow comingling of the funds behind the new and old certificates. We cannot say the court erred in holding this rule invalid.

### 4. Rule 39

The rule allows authorization to operate as a burial association if the board's executive secretary finds the association has "sufficient funds" and is "sound enough." The best argument in favor of this rule is that the executive secretary's discretion is clearly limited by the rate and deposit requirements. That argument fails, however, upon realization that the rate and deposit requirements are, in effect, very uncertain in view of the fact that the money collected and the deposits made will be subject to the amounts of claims on old certificates. Those old certificate loads vary from association to association, and thus the rule permitting the executive secretary to exercise discretion based on whether an association has "sufficient funds" or is "sound enough" confers a very broad discretion.

The board has cited no authority, and has not even argued, that the court's decision with respect to this rule is wrong. We are given no reason to disagree with the ruling that it is improper to confer unguided discretion upon the executive secretary in the granting of authority to issue operating certifi-

cates to the burial associations. This rule is apparently addressed only as part of the package of rules which the board argues is a step toward implementation of the legislative purpose of achieving financial integrity of all burial associations. We cannot agree that Rule 39 contributed to accomplishment of that purpose.

Affirmed.

HAYS, J., not participating.