ARKANSAS DEPARTMENT OF HUMAN SERVICES
*v.* HILLSBORO MANOR NURSING HOME, INC.

90-278                                            803 S.W.2d 891

Supreme Court of Arkansas
Opinion delivered February 11, 1991

*Richard B. Dahlgren* and *Breck G. Hopkins*, for appellant.

*Schackleford, Schackleford & Phillips*, by: *Teresa Wineland*, for appellee.

TOM GLAZE, Justice. This is an appeal from the circuit court's order reversing a decision by the Department of Human Services (DHS) refusing to issue appellee a license for an additional fifty-three nursing home beds. Appellee had sought these additional beds immediately after the General Assembly enacted Act 593 of 1987, a law that allowed nursing homes to expand their facilities without acquiring a certificate of need or permit of approval from the Health Services Agency, so long as the expansion cost less than $500,000. Appellee's first request to the Office of Long Term Care (OLTC) was by letter dated April 30, 1987, wherein it asked for an inspection and the licensure of eighteen additional beds. These beds were the result of converting private rooms to semi-private rooms. By letter dated May 26, 1987, appellee indicated that it intended to add another thirty-five beds (for a total of fifty-three new beds) by way of new construction, with construction to begin on July 1, 1987. It further requested guidance on how to proceed.

OLTC responded by letter dated July 10, 1987, notifying appellee that Act 40 of 1987 (enacted June 19, 1987) placed a two-year moratorium on the addition of any new nursing home beds and required a permit of approval from the Health Services Agency. Even so, on September 17, 1987, the Long Term Care Facility Advisory Board (Board) instructed OLTC to review all applications for new beds that had already been submitted during the period Act 593 was in effect. Accordingly, OLTC reviewed those applications, including appellee's, but did so by applying the provisions of Act 40, not Act 593. On January 6, 1988, OLTC denied both of appellee's letter requests, stating (1) appellee had not completed a proper application for additional beds, (2) it had

submitted no plans of the proposed construction and (3) Act 40 imposed a moratorium upon the issuance of licenses for new beds and after the moratorium, a permit of approval was necessary but not provided by the appellee.

After OLTC's review, the Board provided for an administrative hearing on appellee's requests, and while the officer at that hearing overruled OLTC's ruling that appellee failed to submit a proper or completed application and plans for construction, he affirmed OLTC's denial of appellee's requests under Act 40. This hearing was held on January 17, 1989. The Board formally adopted the hearing officer's findings and conclusions on August 10, 1989.

The Board's decision was submitted to the deputy director of the Division of Economic & Medical Services for review and final determination pursuant to Ark. Code Ann. § 20-10-303 (Supp. 1989). The deputy director agreed that the Act 40 moratorium precluded licensing of appellee. However, he differed with the Board in that he found appellee should also be denied a license due to its failure to comply with the application and construction plan requirements. This decision by the deputy director constituted the "Final Agency Decision" for purposes of review and was issued on September 15, 1989.

Appellee appealed the "Final Agency Decision" to the Union County Circuit Court which reversed the decision and ordered that appellee's additional bed requests be licensed under Act 593 without a certificate of need or a permit of approval which is required under Act 40. Appellants now appeal the trial court's decision contending the court erred in applying the provisions of Act 593 rather than Act 40 and in finding OLTC arbitrarily and capriciously denied appellee a license for additional beds based on appellee's failure to file a completed application and submit required construction plans.

The trial court was clearly correct that appellee's requests for licensure of an additional fifty-three beds were controlled by Act 593 and the law in effect when such requests were submitted to the OLTC. See Scott v. Consol. Health Management, Inc., 297 Ark. 601, 764 S.W.2d 434 (1989); Arkansas Dept. Human Servs. v. Greene Acres Nursing Homes, Inc., 296 Ark. 475, 757 S.W.2d 563 (1988). In Scott, this court

reemphasized our holding in *Greene Acres* that a nursing home which applied for additional beds when Act 593 was effective did not have to comply with any certificate of need or permit of approval requirements under Act 40, but it still was subject to Act 40's two-year period of moratorium. *Scott*, 297 Ark. at 604, 764 S.W.2d at 436. Thus, after the moratorium expired under Act 40, appellants should have considered appellee's requests for added beds under Act 593, which required no certificate of need or permit of approval. Accordingly, to the extent the trial court held appellee's licensure requests should be reviewed and issued under Act 593, which was in effect when its requests were submitted, the court did not err.

■ We must, however, disagree with the trial court's holding that DHS acted arbitrarily, capriciously or abused its discretion when it ruled appellee's application for licensure of additional beds had failed to comply with licensure laws and regulations in existence when appellee submitted its requests under Act 593. As we pointed out in *Greene Acres,* Act 593 (or Act 40 for that matter) did not abolish the license application process. In this respect, DHS regulates any applicant or licensee that desires to make alterations or additions to existing facilities or the construction of new facilities, and an applicant must submit plans for such altered, expanded or new facility before construction is commenced. *See* Ark. Code Ann. § 20-10-225 (Supp. 1989). As previously mentioned, appellee, in its so-called applications or requests, informed OLTC that it intended to proceed with construction of its expanded facilities on July 1, 1987; nonetheless, appellant never submitted its construction plans or specifications to OLTC as was required under DHS regulations. *See Long Term Care Provider Manual*, §§ 421-445, and *see* in particular § 424.1.

And while appellee and appellants at times referred to appellee's two letters to OLTC as applications, those letters in no way met the form or content requirements provided for license applications under DHS's regulation § 202 of its Provider Manual. Among other things, § 202 requires license applications to be submitted on a notarized form provided by OLTC. The application must include a license fee and information relating to the applicant's ownership interests in the nursing home. The applicant, under the form, must also provide the names of the

persons in control of the home and a signed statement by a registered nurse indicating responsibility for nursing services of the home. Appellee's letters were clearly deficient in this respect.

We acknowledge appellee's contention that these DHS licensure regulations do not apply to new bed application requests by already licensed facilities. We disagree. As previously mentioned above, this court in *Greene Acres* held that Act 593 did not abolish the license application process and that, while Act 40 applied only to the issuance of permits of approval, that Act's language provided in effect that no *additional beds* would be *licensed* for nursing homes during the moratorium period. We note also that DHS's *Long Term Care Provider Manual*, § 100, defines "licensed bed capacity" as the exact number of beds for which a license application has been made and granted, and that such definition implies that any additional beds require a new application and license. Of course, DHS and OLTC have interpreted the applicable laws and regulations to require a new license for additional beds and regulations to require a new license for additional beds and as we have held in the past, an administrative agency's interpretation of a statute or its own rules will not be overturned unless it is clearly wrong. *Arkansas Contractor's Licensing Board* v. *Butler Construction Co.*, 295 Ark. 223, 748 S.W.2d 129 (1988); *Clinton v. Rehab. Hospital Services Corp.*, 285 Ark. 393, 688 S.W.2d 272 (1985).

Here, we are unable to say the appellants' interpretation of the laws and its licensure regulations is clearly wrong, nor can we conclude the agency decision was arbitrary or capricious. Therefore, we reverse the trial court's holding and remand with directions for it to reinstate and affirm DHS's denial of appellee's application for additional beds.