Rachel McGrew, Executive Secretary Arkansas Burial Association Board
101 East Capitol, Suite 113 Little Rock, Arkansas 72201
Dear Ms. McGrew:
You have asked for my opinion on how Arkansas burial associations may use the income received from investing the fees of their members. I have paraphrased your question as follows:
 Burial associations receive fees from their members. Those fees can be spent for only one of two general purposes: operating expenses or payment of members' benefits. My question is about operating expenses. Associations may use only 25% of the fees for their operating expenses. Further, associations may invest some of the remaining 75% and use some of the interest from those investments for the associations' operating expenses. Are associations permitted to use non-interest investment-income (e.g., capital gains or dividends) for operating expenses?
RESPONSE
In my opinion, based on standard rules of statutory construction, the answer to this question is "no."
DISCUSSION
Your question is one of statutory interpretation, the goal of which is to give effect to the legislature's intent. To determine that intent, we look to the ordinary meaning of the statute's plain words, which, if possible, are read so that no word is *Page 2 
left superfluous or insignificant. If, after doing this, we find that the statute is open to two or more plausible readings, then the statute is ambiguous. We interpret ambiguous statutes by resorting to the rules of statutory construction, which are applied in the light of the statute's history, language, and subject matter.[1]
The statute to which we will apply these principles is A.C.A. § 23-78-122, which governs how associations use members' fees. An association's use of fees is governed in two ways: according to the fee itself and according to any interest generated from investing the fee. As for the former, subsection 23-78-122(a)(1)(A) requires 75% of every fee be used "solely for the payment of members' benefits. In other words, none of this 75% can be spent on operating expenses.[2] Subject to certain caveats, any of the 75% not needed for "immediate payments]" or for "reasonably anticipated payments" of members' benefits can be invested in certain, specified high-grade investments.[3] Subsection 23-78-122(b) governs the use of any interest derived from those investments: "Seventy-five percent (75%) of the interest derived from the investments shall also not be usable for the payment of operating expenses."
Before applying the above rules of construction, it will be helpful to distill the two primary propositions from this statute:
 • First, associations are permitted, but not required, to apply 25% of fees to the association's operating expenses.
 • Second, associations are permitted, but not required, to apply 25% of the interest earned on investments to the association's operating expenses.
The statute is simply silent on the use of other kinds of investment income such as, for example, capital gains or dividends. Because of this silence, and because the statute does not expressly provide any direction on how to interpret this silence, *Page 3 
the statute is ambiguous regarding your question. Thus, we must resort to the rules of statutory construction.
One such rule of construction pertains to the interpretation given to the statute by an agency charged with implementing the statute.[4] In such cases, courts view the agency's interpretation as "highly persuasive" and will not overturn it unless the interpretation is "clearly wrong."[5]
The Burial Association Board, which administers section 23-78-122, has adopted rules to which a court will turn for the Board's interpretation of the statute.[6]
Those rules clearly prohibit associations from using non-interest investment-income for operating expenses. Under Board Rule 2, only "receipts" can be used for operating expenses.[7] And whileinterest investment income is considered a "receipt," non-interest investment-income is not.[8] Therefore, non-interest investment-income cannot be used for operating expenses. Non-interest investment-income must be used to pay members' benefits, per Rule 2.[9]
As noted above, the Board's interpretation, as the latter is exemplified in its rules and regulations, will be highly persuasive to a court and will only be disregarded if that interpretation is clearly wrong. Given the threshold determination above — i.e. *Page 4 
that, in this case, the statute's silence creates an ambiguity — it is, in my opinion, highly unlikely that a court would say that the Board's interpretation is contrary to the statute.
An additional principle of statutory construction corroborates the foregoing conclusion founded in the Board's rules. When interpreting statutes, courts are often guided by the historical circumstances at the time of the statute's enactment.[10] The foregoing conclusion derived from the Board's rules is corroborated by both the history of Arkansas burial associations in general and the circumstances giving rise to portions of section 23-78-122 in particular.
Burial associations in Arkansas started in the 1930s due to the widespread distrust of banks and insurance companies caused by the Great Depression.[11] As non-profit mutual-benefit societies, their original purpose was to defray the cost of members' funerals. But many associations mismanaged members' fees because "[b]y 1987, over 100 of the state's 164 burial associations were insolvent."[12] This financial trouble led the General Assembly to pass several statutes — including portions of section 23-78-122 — that were intended to "establish actuarial rates and reserve requirements necessary to ensure the financialintegrity of all burial associations."[13]
This brief review of the historical circumstances behind burial associations makes clear that, when the General Assembly intervened to regulate these associations, its goal was, among other things, to ensure that associations had plenty of money to honor members' claims. And one of the primary means to that goal was to restrict the ways associations could use members' fees. In light of these purposes, it seems evident that the General Assembly intended to limit the way associations could use their fees and investment income on those fees. The fees themselves and *Page 5 
income derived from invested fees were intended to be used for the benefit of the members, not the operators.
This history also refutes the assertion that the legislature's silence regarding the use of non-interest investment-income must be interpreted as granting authority to an association to use such income for operating expenses. It is clear from the legislative history that the General Assembly intended to restrict significantly the way associations use their fees and to protect the principle of any invested fees.
Therefore, in my opinion, a court faced with your question would likely hold that burial associations cannot use non-interest investment-income for operating expenses.
Assistant Attorney General Ryan Owsley prepared this opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM/RO:cyh
[1] E.g. DaimlerChrysler Corp. v. Smelser,375 Ark. 216, 222, 289 S.W.3d 466, 472 (2008) (internal citations omitted).
[2] A.C.A. § 23-78-122(a)(1)(A): "Seventy-five percent (75%) of the collections of any burial association or society shall be solely for the payment of benefits provided by membership certificates and shall not be used for the payment of operating expenses." (Repl. 2004).
[3] A.C.A. § 23-78-122(a)(2).
[4] E.g. Brookshire v. Adcock,2009 Ark. 207, 5, 307 S.W.3d 22, 26 (2009).
[5] E.g. Dooley v. Automated Conveyor Sys. Inc.,84 Ark. App. 412, 419, 143 S.W.3d 585, 590 (2004).
[6] See e.g., Ark. Dept. Human Srvs. v. Hillsboro ManorNursing Home, Inc.,304 Ark. 476, 480, 803 S.W.2d 891, 893 (1991).
[7] Rule 2 establishes, among other things, two discrete rules. First, all operating expenses must be equal to or less than 25% of "receipts" for any given period. Second, all "other funds of whatever kind or character" remain the association's property "for the benefit of its members only."
[8] Rule 4 excludes non-interest investment income from "receipts": "Necessary expenses, including but not limited to printing, stationery, postage, office supplies, clerical hire, and statutory fees may be paid by the association. No organization or promotional expense may be charged and in no event may expenses for any year exceed [25%] of the gross receipts of dues/assessmentsand interest of the association for such year." (Emphasis added.)
[9] See, supra, note 7 ("all other funds are to be used for the benefit of the associations' members.").
[10] Lawhorn Farm Srvs. v. Brown,335 Ark. 272, 279, 984 S.W.2d 1, 4 (1998) ("As a guide in ascertaining legislative intent, we often examine statutory historyas well as conditions contemporaneous with the time of theenactment, the consequences of interpretation, and all other matters of common knowledge within the court's, and in this case the Commission's, jurisdiction.") (emphasis added).
[11] McEuen Burial Assn. v. Arkansas Burial Assn. Bd.298 Ark. 572, 573, 769 S.W.2d 415, 416 (1989).
[12] Id.
[13] Id. (emphasis added).