BYARS CONSTRUCTION COMPANY *v.* Clifton BYARS

CA 00-192                                           34 S.W.3d 797

Court of Appeals of Arkansas
Division IV
Opinion delivered December 20, 2000

*Huckabay, Munson, Rowlett & Tilley, P.A.*, by: *Carol Lockard Worley* and *Julia Busfield*, for appellant.

*Dodds, Kidd, Ryan & Moore*, by: *Donald S. Ryan*, for appellee.

JOHN B. ROBBINS, Chief Judge. Appellant Byars Construction Company appeals the award of benefits by the Workers' Compensation Commission to appellee Clifton Byars. Specifically, appellant raises four points on appeal: (1) that the Commission erred in determining that Ark. Code Ann. § 11-9-514(a)(1) and (2) (Repl. 1996) became void in September 1995; (2) that there is no substantial evidence to support the Commission's finding that Dr. Saer was an authorized treating physician through a referral; (3) that there is no substantial evidence to support the Commission's award of additional temporary total disability benefits; and (4) that there is no substantial evidence to support the findings or award of payments in reference to a Department of Human Services lien. We reverse as to points (1), (2), and (4); we affirm as to (3).

On April 19, 1996, appellee, who worked as a carpenter, sustained an admittedly compensable injury to his back, a compression fracture at T7, when the scaffolding upon which he was standing collapsed causing him to strike his back on a ledge. He was treated in Baptist Hospital's emergency room and was released. Thereafter, appellee was treated conservatively by Dr. Yocum and was paid temporary total disability during that period. Dr. Yocum released appellee to return to work as of June 17, 1996.

Appellee suffered recurring and more severe back pain in October 1996, for which he received additional treatment and medication from Dr. Yocum. Appellant sent appellee to Dr. Rutherford, who thought that appellee was embellishing his symptoms with regard to the healing fracture. However, Dr. Rutherford sent appellee for a bone scan. Results from the bone scan substantiated

appellee's complaints, and Dr. Rutherford stated that appellee had indeed not yet healed. Dr. Rutherford continued with conservative treatment through December 23, 1996, when he released him to return to work.

Dr. Yocum released him from his care on January 24, 1997, telling appellee to come back as needed. Dr. Yocum assigned a ten-percent permanent physical impairment rating to the body as a whole, which appellant paid. Dr. Rutherford opined on March 24, 1997, that appellee had reached maximum medical improvement, again releasing appellee from his care.

Because his symptoms persisted, on November 4, 1997, appellee sought on his own initiative the care of orthopedist Dr. Cash. Because Dr. Cash thought that appellee was a candidate for a spinal fusion, he referred appellee to Dr. Saer. In a letter to Dr. Cash from Dr. Saer on January 30, 1998, Dr. Saer thanked Dr. Cash for asking him to evaluate appellee, and stated that he thought the pain was related to the original workplace injury, recommending an exercise program and additional studies at that time. In May 1998, Dr. Saer reviewed the studies performed on appellee and discussed options with appellee, concluding that a posterior stabilization and fusion surgery was a viable option to relieve his pain. The surgery was performed on September 2, 1998. On October 9, 1998, Dr. Saer opined within a reasonable degree of medical certainty that the work injury was the major cause for the need for surgery. Appellee was told by Dr. Saer that he could begin increasing his activities on February 16, 1999. Appellee stated that the surgery improved his physical condition.

It is undisputed that appellee had received notice of the procedures to follow if he wanted to change physicians and that he had not requested a change of physician when he went to Drs. Cash or Saer. Appellant contested payment for Dr. Saer's treatment and surgery, alleging that Dr. Saer was not an authorized treating physician, that therefore the surgery was unauthorized, and that any temporary total disability associated with the surgery was not compensable.

After a hearing before the Administrative Law Judge, the ALJ agreed that the treatment was unauthorized and found that appellee was responsible for those costs; found that the Department of

Human Services' lien on benefits was extinguished and held for naught; and found that appellee was entitled to additional temporary total disability commencing upon the date of surgery and ending on February 16, 1999, regardless of whether the treatment was from an authorized physician.

Both appellant and appellee appealed to the Commission, which affirmed in part and reversed in part the ALJ's decision, making the following findings: (1) that the managed care system as established in September 1995 effectively voided the statutory provision found in Ark. Code Ann. § 11-9-514(a)(1) and (2) (Repl. 1996), and that because there was no evidence that appellant had contracted with a certified managed care entity, appellee could chose any physician for reasonable and necessary treatment; (2) that Dr. Saer's treatment was the result of a referral from an authorized treating physician, Dr. Cash, and was therefore not a change of physician; (3) that whether treatment is authorized is irrelevant to an award of temporary total disability, and thus appellant was liable for that period of temporary disability associated with the reasonable and necessary surgery; and (4) that appellant was to reimburse the Department of Human Services for any monies expended on behalf of appellee. This appeal resulted.

The standard of review with regard to appeals from the Workers' Compensation Commission has been oft-stated. In determining the sufficiency of the evidence to sustain the findings of the Workers' Compensation Commission, the appellate court reviews the evidence in the light most favorable to the Commission's findings and affirms if the findings are supported by substantial evidence. *Woodall v. Hunnicutt Constr.*, 67 Ark. App. 196, 994 S.W.2d 490 (1999). The question is not whether the evidence would have supported findings contrary to the ones made by the Commission; there may be substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we sat as the trier of fact or heard the case de novo. *Id.* Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Weldon v. Pierce Bros. Constr.*, 54 Ark. App. 344, 925 S.W.2d 179 (1996). We will not reverse a decision of the Commission unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusion arrived at by the Commission. *Id.; see also*

*Maverick Transp. v. Buzzard*, 69 Ark. App. 128, 10 S.W.3d 467 (2000).

First, appellant argues that appellee did not follow the change-of-physician rules and that the Commission erred in concluding otherwise. Arkansas Code Annotated section 11-9-514 (Repl. 1996), entitled "Medical services and supplies-Change of physician," set forth the applicable law, stating at subsection (a):

(a)(1) If the employee selects a physician, the Workers' Compensation Commission shall not authorize a change of physician unless the employee first establishes to the satisfaction of the commission that there is a compelling reason or circumstance justifying a change.

(2)(A) If the employer selects a physician, the claimant may petition the commission one (1) time only for a change of physician, and if the commission approves the change with or without a hearing, the commission shall determine the second physician and shall not be bound by recommendations of claimant or respondent.

(B) However, if the change desired by the claimant is to a chiropractic physician, optometrist, or podiatrist, the claimant may make the change by giving advance written notification to the employer or carrier.

(3) Following establishment of an Arkansas managed care system as provided in § 11-9-508, subdivisions (a)(1) and (2) of this section shall become null and void, and thereafter:

(A)(i) The employer shall have the right to select the initial primary care physician from among those associated with managed care entities certified by the commission as provided in § 11-9-508.

(ii) The claimant employee, however, may petition the Commission one (1) time only for a change of physician, who must also either be associated with a managed care entity treating physician of the employee who maintains the employee's medical records and with whom the employee has a bona fide doctor-patient relationship demonstrated by a history or regular treatment prior to the onset of the compensable injury, but only if the primary care physician agrees to refer the employee to a certified managed care entity for any specialized treatment, including physical therapy, and

only if such primary care physician agrees to comply with all the rules, terms, and conditions regarding services performed by the managed care entity initially chosen by the employer.

(B) A petition for change of physician shall be expedited by the commission.

■ The Commission found that subsections (a)(1) and (2) of this statute became null and void in September 1995 pursuant to subsection (a)(3), when an Arkansas managed care system was established. The Commission then concluded that because there was no evidence in the record to indicate that appellant had contracted with a certified managed care entity, there were no restrictions on a claimant changing physicians and appellee was free to select any physician that he wanted. The Commission cited as support one of its earlier decisions, *Savage v. City of Little Rock*, Workers' Compensation Commission E708648 (October 7, 1999). While we do not recognize Commission opinions as controlling precedent in our review of workers' compensation cases, an administrative agency's interpretation of a statute and its own rules will not be overturned unless it is clearly wrong. See *Arkansas Dep't of Human Servs. v. Hillsboro Mannor Nursing Home,* Inc., 304 Ark. 476, 803 S.W.2d 891 (1991).

■ Workers' Compensation Rule 33 was promulgated by the Commission and became effective on July 1, 1994. This rule provided for implementation of a voluntary managed care system. In *Savage* the Commission took notice of the list of managed care organizations that on September 1, 1995, it had certified pursuant to Ark. Code Ann. § 11-9-508(d) and its Rule 33. The Commission construed the applicable statute, rule and certification list and concluded that an Arkansas managed care system was established in September 1, 1995, and, consequently, Ark. Code Ann. § 11-9-514(a)(1) and (2) became null and void at that time. We do not find that its interpretation is clearly wrong.

However, the Commission's next conclusion, that because there was no evidence in the record to indicate that appellant had contracted with a certified managed care entity, the appellee was free to select any physician that he wanted, is contrary to the statute. Obviously, section 11-9-514(a)(3), as enacted and effective when appellee was injured in 1996 and when he sought medical treatment from Dr. Cash in 1997 and received treatment from Dr. Saer in

1998, had a loophole, because the statute did not address how a claimant was to go about changing physicians if his employer had not contracted with a managed care organization. This loophole was corrected by Act 1167 of 1999, which added subsection (iii) to 11-9-514(a)(3). Because of this loophole, the Commission held that appellee was not subject to any change of physician requirements and could seek services wherever he desired. The Commission erred as a matter of law.

██ The Commission failed to take into account Ark. Code Ann. § 11-9-514(b), which immediately follows the provisions discussed above dealing with the selection and change of physicians:

> (b) Treatment or services furnished or prescribed by any physician other than the ones selected according to the foregoing, except emergency treatment, shall be at the claimant's expense.

Therefore, even if section 11-9-514(a) failed to address the situation, as exists here where (1) and (2) have become null and void yet the employer has not contracted with a managed care organization, subsection (b) appears to fill this void by precluding any change of physician, except emergency treatment, or else the new physician's services will be at the claimant's expense. We are obliged to strictly construe and apply the workers' compensation act. Ark. Code Ann. § 11-9-704(c)(3). The Commission erred in holding to the contrary, and we must reverse on this point. Appellee is responsible for payment of the medical services rendered by Dr. Saer.

██ In addition, the Commission found that appellant agreed to the medical treatment provided by Dr. Cash; therefore, Dr. Cash's referral to Dr. Saer converted Dr. Saer into an authorized treating physician rendering the change-of-physician rules inapplicable. We hold that no substantial evidence supports that finding. We agree that the change-of-physician statute is inapplicable if an authorized treating physician refers the claimant to another doctor for examination or treatment. *Amer. Greetings Corp. v. Garey*, 61 Ark. App. 18, 963 S.W.2d 613 (1998). However, appellant did not "pre-approve" the treatment rendered by Dr. Cash, and there is no evidence of record that Dr. Cash's treatment was ever paid by appellant.

At the hearing before the ALJ, counsel for appellant stated, "Respondents contend that with regard to change of physicians, the

Claimant has been *treated* by several board-certified physicians, including Dr. Yocum and Dr. Rutherford and *Dr. Cash*.... It is the Respondents' position that a change of physician is not reasonable and necessary." That comment does not constitute an acknowledgment that appellant paid or accepted Dr. Cash's treatment. Moreover, the Commission's conclusion that appellant acquiesced in any findings made by the ALJ is simply unfounded because appellant appealed the entirety of the ALJ's opinion.

■ We agree with the appellant that it fully argued that appellee sought the care of Dr. Cash on his own initiative after he had been released from the care of his authorized treating physicians. Furthermore, appellant's counsel examined appellee and elicited admissions that he sought out this care from Dr. Cash without requesting a change of physician; that he did so because he did not "like" Drs. Rutherford or Yocum; and that the diagnostic testing that Dr. Saer desired to have completed was offered by the providers under the authorized treating physicians, which appellee refused. No substantial evidence supports the finding that Dr. Cash was an authorized treating physician.

■ Because we are reversing the first two issues on appeal, causing the costs of Dr. Saer's treatment and surgery to be borne by appellee, the issue with regard to the reimbursement of the Department of Human Services for its Medicaid-benefits lien is moot.

■ ■ As to temporary total disability (TTD), the Commission and the ALJ decided that appellee was in his healing period and entitled to those benefits from the date of the surgery on September 2, 1998, through February 16, 1999, when he had reached maximum medical improvement, whether or not the treatment was authorized. Temporary total disability is that period within the healing period in which a claimant suffers a total incapacity to earn wages. *Georgia-Pacific v. Carteri*, 62 Ark. App. 162, 969 S.W.2d 677 (1998). The healing period is that period for healing of an injury which continues until the claimant is as far restored as the permanent character of the injury will permit. *Id.*

■ Appellant argues that this treatment was not reasonable and necessary and that it was unauthorized. Therefore, it is appellant's position that it is not responsible for payment of any associated TTD for that treatment. We disagree. Although we have already

decided that the treatment was unauthorized, that does not end the inquiry. The Commission found that the treatment of Dr. Saer was both reasonable and necessary. We hold that there is substantial evidence to indicate that this surgery was reasonable and necessary. Dr. Yocum, an authorized treating physician, agreed that Dr. Saer's desire to do additional work-ups and treatment was reasonable and necessary as demonstrated by Dr. Yocum's letter of April 16, 1998, to appellant's counsel stating that "the studies suggested by Dr. Saer are indicated and that further treatment is indicated." Indeed, it is undisputed that appellant offered to perform the recommended studies and that appellee refused to see those physicians for that purpose. There is no evidence of record that contradicts either Dr. Saer's opinion that the major cause of the need for surgery was his work-related accident or appellee's testimony that this surgery significantly improved his physical condition. While appellee is responsible for paying for Dr. Saer's treatment and surgery, appellant is responsible for the time that appellee remained in his healing period and was totally incapacitated from earning wages, all stemming from a work-related event.

We reverse and remand for entry of an opinion consistent with ours.

BIRD and NEAL, JJ., agree.