Willie COLLINS *v.* LENNOX INDUSTRIES, INC.;
American Motorist Insurance Company

CA 01-1109                                    75 S.W.3d 204

Court of Appeals of Arkansas
Division IV
Opinion delivered May 8, 2002

*Baim, Gunti, Mouser, Robinson & Havner, PLC*, by: *Michael W. Boyd*, for appellant.

*Friday, Eldredge & Clark*, by: *Betty J. Demory*, for appellee.

KAREN R. BAKER, Judge. This is an appeal from a decision of the Arkansas Workers' Compensation Commission's denial of appellant's request for a change of physician. We hold that the Commission's finding that the employer had fulfilled the obligation of providing adequate medical treatment, diagnostic testing, and consultation with specialists, under the provisions of Ark. Code Ann. § 11-9-508 (Repl. 2002), was not supported by substantial evidence. Arkansas Code Annotated section 11-9-514(a)(3)(ii) (Repl. 2002) established an absolute, statutory right to a one-time change of physician under the Workers' Compensation Act where the employer has contracted with a managed-care organization and has exercised the right to select the initial primary-care physician. The employer's denial of the one-time change of physician as a matter of law fails to fulfill the obligation imposed by section 11-9-508. Accordingly, we reverse.

*Facts*

On January 4, 2000, appellant (while employed by Lennox Industries) reached for a coil weighing between thirty and fifty pounds that was stacked above his head. As he flipped the coil over to remove it from the stack, he injured his back. The injury was reported in a timely manner, and appellant was sent to Dr. N.B. Daniel.

Dr. Daniel diagnosed appellant with a lumbosacaral strain. Appellant requested and received a referral to an orthopedist (Dr.

John Wilson). On January 27, 2000, Dr. Wilson diagnosed appellant with "mild sciatia." Dr. Wilson also noted that appellant had "tenderness over the right sciatic notch," and that his straight-leg raising was "mildly positive." Dr. Wilson released appellant to return to work with no restrictions. On February 16, 2000, appellant returned to Dr. Wilson. After seeing appellant, Dr. Wilson noted:

> [Appellant] was reassured that he does not have operative problems with his back and should attempt to continue his normal activities at work. He wanted an MRI done on his back and, quite frankly, without objective findings or radicular findings, I do not feel the study would be necessary. He seems a bit upset with me because of my position. At any rate, this gentleman has been released to return to his normal activities at work.

On February 22, 2000, appellant returned to Dr. Daniel, who reported:

> On exam today he moves very well . . . My impression still is that he has a lumbosacral strain . . . [Appellant] has it in his mind that neither myself or the specialty physician, that I don't personally know, don't care about him and we are limiting services in that we haven't done a MRI and we haven't done a myelogram and we are not trying to really find out what is wrong with his back. He doesn't believe me when I tell him that the likelihood of finding something abnormal on a MRI of his back, or a myelogram is very small and even if we did find that he has for instance a bulging disc with the degree of symptoms that he has — nothing would be done therapeutically such as surgery, trigger point injection, epidural steriods, so forth, so forth.

Despite these two reports, appellant continued to request a MRI, and appellees eventually approved of the diagnostic test. Dr. Wilson performed the test and on March 9, 2000, reported that the findings revealed nothing "of an operative nature." He also noted that the MRI showed early disc degenerative disease and again released appellant to return to work. On March 22, 2000, appellant presented to Dr. Wilson again. After the visit, Dr. Wilson reported:

> I have advised [appellant] that he does not have an operative problem with his back and that he has some early degenerative

disc disease and superimposed lumbosacral strain but certainly nothing that needs surgery and this is something that he should be able to work through. He asked for medication and related that he had been scheduled for a myelogram. When asked the circumstances of who was doing this, he said he was not supposed to tell me. At any rate, I do not suggest a myelogram. His MRI did not reveal anything of an operative nature.

On March 27, 2000, appellant returned to Dr. Daniel and was approved for an independent medical examination by Dr. Bruce Safman, which was conducted on April 12, 2000. Dr. Safman's findings were consistent with Dr. Wilson's. Additionally, Dr. Safman noted that appellant wanted to tape-record the examination and was not happy with the fact his degenerative changes were not related to the injury. Finally, on May 10, 2000, appellant saw Dr. Wilson again. Dr. Wilson reported "mild restriction of motion of the lumbar spine with tenderness," "mild spasm," and "early degenerative disk disease" and "significant herniation."

On May 23, 2000, appellant (through counsel) requested a change of physician. The request was denied by appellee. Appellee responded that further medical treatment was not reasonable and necessary.

On October 4, 2000, the Administrative Law Judge, filed a pre-hearing order stating, in relevant part, "By agreement of the parties, the issues to be litigated at the hearing are limited to the following: Continuing medical treatment; change of physician; controversion and attorney's fees. All other issues are reserved." The parties stipulated that appellant suffered a compensable injury on January 4, 2000, that an employee-employer-carrier relationship existed on that date, that his compensation rate for TTD purposes was $371.00, and that Lennox was associated with a managed-care organization.

The ALJ fashioned her opinion around an analysis of "whether or not additional medical treatment is reasonable, necessary and related to the compensable injury." Although she did not directly address the change of physician request in her findings, the opening sentence of her March 5, 2001, order states that "A hear-

ing was conducted to determine the claimant's entitlement to payment of continuing medical treatment, a change of physician, and attorney's fees." The ALJ in its finding and conclusions found that the employer had fulfilled the obligation of providing adequate medical treatment, diagnostic testing, and consultation with specialists under the provisions of Ark. Code Ann. § 11-9-508. Further findings stated as follows:

1. The Workers' Compensation Commission has jurisdiction of this claim in which the relationship of employee-employer-carrier existed among the parties on January 4, 2000, at which time the claimant sustained a compensable injury at a compensation rate of $371. Medical expenses and temporary total disability were paid.

2. The respondents have paid all appropriate benefits and expenses.

3. The claimant has failed to prove by a preponderance of the credible evidence of record that further medical treatment is reasonable, necessary, or related to the compensable injury.

The Full Commission affirmed these findings, and this appeal followed.

Appellant asserts two points on appeal: (1) Arkansas Code Annotated § 11-9-514 provides claimant employee an absolute right to a one-time-only change of physician, so long as he has not selected the initial physician, and (2) the Commission, by adopting the decision of the Administrative Law Judge, incorrectly placed a burden of proof upon the claimant employee for purposes of deciding the issue of a change-of-physician request.

■ On appeal, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission and will affirm the Commission's decision if it is supported by substantial evidence. *See* Ark. Code Ann. § 11-9-711(b)(4)(d) (Repl. 2002); *Spencer v. Stone Container Corp.*, 72 Ark. App. 450, 38 S.W.3d 909 (2001); *Superior Indus. v. Thomaston*, 72 Ark. App. 7, 32 S.W.3d 52 (2000). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to sustain a conclusion. *Air Compressor Equip. v. Sword*, 69 Ark.App. 162, 11 S.W.3d 1 (2000). The issue is not whether we might have

reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Geo Specialty Chem. v. Clingan*, 69 Ark.App. 369, 13 S .W.3d 218 (2000).

■ Our analysis focuses on the issue of whether an injured employee is entitled as an absolute right to a one-time change of physician. Arkansas Code Annotated section 11-9-514(a)(3)(ii) (Repl. 2002) provides a claimant with an absolute one-time right to a change of physician. The language in subsection (a)(3)(ii) mandates that "where the employer has contracted with a managed care organization certified by the commission, the claimant employee, however, *shall be allowed* to change physicians by petitioning the commission one (1) time only for a change of physician." (Emphasis added.) The Commission's lack of discretion regarding the grant or denial of the employee's right to a change becomes especially clear when considering the language of § 11-9-514(a)(1) and (2), which became null and void with the adoption of the managed health-care system in Arkansas. The now inapplicable section included the phrase "if the Commission approves the change," which allowed the Commission the discretion to approve or disapprove any change of physician. *See Torrey v. City of Fort Smith,* 55 Ark. App. 226, 934 S.W.2d (1996); *Byars Const. Co. v. Byars,* 72 Ark. App. 158, 34 S.W.3d 797, (2000) (requiring claimant to provide a compelling reason or circumstance justifying a change).

Appellee argues that appellant's request for a change of physician is simply his effort to obtain additional treatment which the Commission found was not warranted upon the facts in this case and the provisions of section 11-9-508. However, even under the former standard where the Commission had discretion in granting a change-of-physician request, the healing period of an employee who had no initial choice of physicians at time of his injury, was of no significance in a proceeding by employee to have change of physician approved by the Commission. *See Wright Contracting Co. v. Randall,* 12 Ark. App. 358, 676 S.W.2d 750 (1984).

■ The currently applicable subsection, (a)(3), contains no discretionary phrase regarding approval of the change, but simply states that the right to a one-time change "shall be allowed, by petitioning the commission." Therefore, there is no discretion left to the Commission. The majority of the section deals with "how" the physician for this change will be selected, not "if" the physician will be selected.

The only suggestion of any type of discretion available to the Commission in the application of this statute is in the method by which one acquires such a change. The statute orders that one acquires the change by petitioning the Commission. The code section goes on to order that the Commission "shall" expedite the petition for change and that "a request *for a hearing* on a change of physician by either the employer or the injured employee shall be given preference on the Commission's docket over all other matters." (Emphasis added.)

■ Because we find that a one-time change of physician is mandatory, we hold that the Commission's finding that the employer had fulfilled the obligation of providing adequate medical treatment, diagnostic testing, and consultation with specialists, under the provisions of Ark. Code Ann. § 11-9-508 was not supported by substantial evidence and accordingly reverse. We do not address appellant's second argument in light of our reversal on the first issue. Therefore, we reverse and remand with instructions to order a change of physician.

GRIFFEN and VAUGHT, JJ., agree.