SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV–13–540

| | |
|---|---|
| PATSY ANN O'GUINN | **Opinion Delivered** October 23, 2013 |
| APPELLANT | |
| V. | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. F904867] |
| LITTLE RIVER MEMORIAL HOSPITAL and RISK MANAGEMENT RESOURCES | AFFIRMED IN PART; REVERSED IN PART |
| APPELLEES | |

## RITA W. GRUBER, Judge

This is a workers' compensation case. The primary issue involves a claimant's request for a change of physician because of the death of the physician who had been treating her pursuant to her one-time statutory right to change from her first treating physician. Patsy Ann O'Guinn, a nurse's aide who provided home health care for Little River Memorial Hospital, sustained a compensable injury to her lower back while attempting to move a bed on May 29, 2009. She was treated by orthopedic surgeon Dr. Kenneth Rosenzweig from June 2009 until February 2010. On June 30, 2010, Ms. O'Guinn was granted a change of physicians to Dr. Harold Chakales, another orthopedic surgeon. Dr. Chakales treated her from July 21, 2010, through November 30, 2011. On January 24, 2012, Ms. Guinn petitioned the Arkansas Workers' Compensation Commission for a change of physician to Dr. Vestal Smith because Dr. Chakales had died. The Medical Cost Containment Division, citing the Commission's decision *Keys v. Wal-Mart*, filed February 16, 2012, (F613738), declined

SLIP OPINION

to enter a change-of-physician order absent a decision by an administrative law judge that Ms. O'Guinn was entitled to receive additional benefits.[1]

On October 4, 2012, the law judge conducted a hearing to determine whether Ms. O'Guinn had proved that she was entitled to permanent partial-disability benefits and additional medical treatment, including appointment of another physician as a result of Dr. Chakales's death. The law judge issued a written decision denying both claims, and the Commission adopted and affirmed the decision of the law judge.

Ms. O'Guinn appeals the Commission's decision, contending that it is not supported by substantial evidence, assumes facts not in evidence, and is based on erroneous conclusions of law. We affirm the denial of her claim for permanent partial impairment. We reverse the denial of her claim for additional medical treatment, and we remand to the Commission for entry of the change-of-physician order that Ms. O'Guinn requested.

The employer shall promptly provide such medical services to an injured employee as may be reasonably necessary in connection with the injury received by the employee. Ark. Code Ann. § 11-9-508(a) (Repl. 2012). A claimant who did not select the initial physician is given an absolute statutory right to a one-time change of physician. Ark. Code Ann. § 11-9-514(a)(3)(A)(ii) (Repl. 2012); *Collins v. Lennox Indus.*, 77 Ark. App. 303, 302, 75 S.W.3d 204, 205 (2002). "The employer's denial of the one-time change of physician as a matter of law fails to fulfill the obligation imposed by section 11-9-508." *Id.* Under *Collins*, the two

---

[1]On Oct. 10, 2012, this court handed down our decision *Wal-Mart Associates, Inc. v. Keys*, 2012 Ark. App. 559, --- S.W.3d ----.

SLIP OPINION

statutes are read in harmony: where the employee has exercised her absolute, statutory right to a one-time change of physician under section 11-9-514(a)(3)(A)(ii), the employer must pay for the initial visit to the new physician in order to fulfill its obligation to provide adequate medical services under 11-9-508. *Wal–Mart Stores, Inc. v. Brown*, 82 Ark. App. 600, 605, 120 S.W.3d 153, 156 (2003). "Without an initial visit and report from [a] one-time-change-of-physician doctor, there is simply no way to determine whether any additional treatment proposed by that physician would be reasonably necessary." *Id.*

The evidence before the Commission in the present case included Ms. O'Guinn's medical records, her testimony, and various written letters and documents. In a letter of February 26, 2010, Dr. Rosenzweig wrote that Ms. O'Guinn had been placed on maximum medical improvement in October of 2009 but continued to have ongoing complaints and had requested ongoing treatment. He wrote in a letter of March 20, 2010, that it was difficult to offer an opinion regarding her injuries, treatment, and response to treatment because of her inconsistency and unreliability on a functional capacity exam of March 3, 2010. Dr. Chakales wrote in an October 19, 2011 office note that Ms. O'Guinn had not had an MRI since 2009 and that he would schedule one. On her last office visit, November 30, 2011, he wrote: "We wanted to obtain an MRI, but it has not been approved. I will see her in one month. She needs no pain medication."

Ms. O'Guinn testified that she never received the MRI Dr. Chakales had recommended; that at the time of his death, she was still experiencing muscle tightness and "burning"; that since then, her back had worsened because she had not had "any" medication;

3

but that she had managed her pain with over-the-counter medication. She asked to be granted the change of physician to Dr. Smith she had requested eight months earlier "so maybe he can figure out what my problem is and help it or tell me that he can't help me with it. . . . I am saying I should get the MRI."

In a two-step analysis, the Commission first found that Ms. O'Guinn failed to establish that any additional medical treatment was reasonably necessary for treatment of her compensable injury. Consequently, the Commission found that her request for another physician to provide additional treatment was moot:

> [T]he circumstances in the present case [are] distinguishable from *Brown* and *Collins*, because in the present case, the claimant received her statutory one-time change of physician to Dr. Chakales in 2010. The respondents paid for the claimant's first visit to Dr. Chakales in 2010, and . . . continued to pay for Dr. Chakales' treatment until his death in late 2011. The general rule is that the employer has the right to controvert an injured workers' right to additional benefits at any time. It appears . . . that, *when Mr. Giles* [Ms. O'Guinn's attorney] *requested a substituted change of physician after Dr. Chakales died, the respondents timely refused to agree on the grounds that no additional treatment would be reasonably necessary in this case.*

(Emphasis added.)

On the issue of entitlement to additional medical treatment and permanent impairment, the Commission wrote:

> The claimant has failed to establish by a preponderance of the credible evidence that any additional medical treatment will be reasonably necessary for her 2009 compensable injury. The claimant's request for a substituted change of physician is therefore denied.
>
> . . . .
>
> [N]o physician has assigned Ms. O'Guinn a permanent impairment rating. While Ms. O'Guinn's lumbar MRI did indicate one annular tear, and Dr. Chakales did on one occasion document the presence of muscle spasms in her lumbar spine, I note that Ms. O'Guinn admittedly had some degree of pre-existing back symptoms. In light of Ms.

4

O'Guinn's admitted pre-existing difficulties with her back when she lifted, and the damage to Ms. O'Guinn's credibility caused by her inconsistent and unreliable effort during functional capacity evaluation testing, . . . Ms. O'Guinn has failed to establish through her own testimony or by any other means, that either her annular tear on MRI or her muscle spasms documented on one occasion by Dr. Chakales support the existence of a permanent impairment causally related to her injury sustained on May 29, 2009.

1. *Claim for Additional Medical Treatment and Change of Physician*

Ms. O'Guinn's right to continued treatment was not controverted until she was left without a treating physician at her change-of-physician doctor's death and sought another change of physician. Under *Collins* and *Brown*, *supra*, an employer cannot avoid entry of or responsibility for a change-of-physician order by attempting to present evidence that additional treatment will no longer be necessary for the work-related injury.

In *Wal-Mart Associates, Inc. v. Keys*, 2012 Ark. App. 559, --- S.W.3d ----, Wal-Mart accepted an eleven-percent permanent anatomical-impairment rating assigned by Ms. Key's first treating physician, Dr. James Blankenship. Ms. Keys was granted her one-time statutory change of physician to Dr. Chakales, whom she saw it an initial office visit of August 5, 2009. Dr. Chakales diagnosed Ms. Keys with chronic pain syndrome following a lumbar laminectomy and fusion; he prescribed Darvocet and planned that she return in three weeks. Wal–Mart paid for this initial visit to Dr. Chakales but controverted any additional treatment. Ms. Keys received unauthorized treatment from Dr. James Hawk in July, August, September, and October 2010 and January 2011. Ms. Keys's attorney stated in a March 2011 hearing before the administrative law judge that Keys saw Dr. Hawk without a referral from Dr. Chakales because Dr. Chakales's health was deteriorating. The decision of the law judge was

appealed to the Commission, which noted in its February 2012 decision that Dr. Chakales had died on December 13, 2011—subsequent to the hearing before the law judge and after the parties filed briefs with the Commission. The Commission held:

> Because the doctor to whom the claimant was granted a change of physician has died, the change of physician order has effectively been nullified. Accordingly, the Full Commission grants the claimant a change of physician to Dr. Hawk as if the claimant's first change of physician never occurred.

The Commission's decision was appealed to this court, and we affirmed. We found that because of her physician's deterioration and ultimate death, Ms. Keys had not received the treatment that she was statutorily entitled to receive, and we agreed with the Commission's conclusion that she received treatment from Dr. Hawk only because Dr. Chakales was unable to perform these duties.

In the present case, we agree with Ms. O'Guinn that under our decisions in *Collins*, *supra*; *Brown*, *supra*; and *Keys*, *supra*, the Commission erred as a matter of law by not granting her a change of physician after her initial change-of-physician doctor died. Dr. Chakales's death effectively nullified the initial change-of-physician order, and Ms. O'Guinn was entitled to a change of physician to Dr. Smith as if the first change of physician never occurred. We reverse the Commission's denial of Ms. O'Guinn's request for a change of physician. We remand to the Commission for a change-of-physician order to Dr. Smith.

2. *Claim for Permanent Anatomical Impairment*

Permanent benefits shall be awarded only upon a determination that the compensable injury was the major cause of the disability or impairment. Ark. Code Ann. § 11-9-102(4)(F)(ii)(a) (Repl. 2012). Permanent impairment is permanent functional or anatomical

loss remaining after the healing period has ended. *Excelsior Hotel v. Squires*, 83 Ark. App. 26, 115 S.W.3d 823 (2003). If the compensable injury combines with a preexisting disease to cause disability or a need for treatment, permanent benefits shall be payable for the resultant condition only if the compensable injury is the major cause of the permanent disability or need for treatment. Ark. Code Ann. § 11-9-102(4)(F)(ii)(b) (Repl. 2012).

Determination of the existence or extent of physical impairment shall be supported by objective and measurable physical or mental findings; "objective findings" are findings that cannot come under the voluntary control of the patient. Ark. Code Ann. §§ 11-9-704(c)(1)(B) & 11-9-102(16)(A)(i) (Repl. 2012). In determining physical or anatomical impairment, complaints of pain may not be considered. Ark. Code Ann. § 11-9-102(16)(A)(ii)(a).

Ms. O'Guinn argues that her preexisting condition had no bearing on the compensability of her claim; that no physician assigned an impairment rating; that, even if her healing period ended "when Dr. Rosenzweig gave up," she was under active treatment by Dr. Chakales, who never declared her at maximum medical improvement and was recommending an MRI; and that an annular tear noted by Dr. Rosenzweig required application of the AMA Guide for Impairment.

The Commission is authorized to decide which portions of the medical evidence to credit and to translate this evidence into a finding of permanent impairment using the AMA Guides, which it has adopted to be used in the assessment. *Excelsior Hotel v. Squires*, *supra*. The Commission may assess its own impairment rating rather than rely solely on its

determination of the validity of ratings assigned by physicians. *Id.* Credibility is a matter for the Commission to determine. *Singleton v. City of Pine Bluff*, 97 Ark. App. 59, 244 S.W.3d 709 (2006). Where the Commission denies a claim because of the employee's failure to meet her burden of proof, we affirm the Commission's decision if it displays a substantial basis for the denial of relief. *Hamilton v. Gregory Trucking*, 90 Ark. App. 248, 205 S.W.3d 181 (2005).

Here, the Commission acknowledged that Ms. O'Guinn's 2009 lumbar MRI indicated an annular tear and that Dr. Chakales had once documented the presence of muscle spasms in her lumbar spine. It noted that no physician had assigned Ms. O'Guinn a permanent impairment rating and that she admittedly had some degree of preexisting back symptomatology. It found that her credibility was damaged because of her inconsistent and unreliable effort on the functional capacity evaluation. Therefore, the Commission concluded that Ms. O'Guinn failed to establish through her own testimony or other means that either the annular tear or muscle spasms supported the existence of a permanent impairment causally related to her 2009 injury. Because the Commission's decision displays a substantial basis for denying Ms. O'Guinn's claim for permanent partial impairment, we affirm on this issue.

Affirmed in part; reversed in part.

HARRISON, J., agrees.

WHITEAKER, J., concurs.

**PHILLIP T. WHITEAKER, Judge, concurring.** I agree with the majority that Ms. O'Guinn is entitled to a change-of-physician order under these circumstances based on our previous interpretation of section 11-9-514 in *Walmart Associates, Inc. v. Keys*, 2012 Ark.

App. 559, ___ S.W.2d ___. I write separately solely to express my belief that the legislature should consider revising the statute to clearly address the circumstances under which a claimant who, through no fault of her own, is left without a physician after having previously invoked her statutory entitlement to a one-time change of physician. I note that the change-of-physician statute as currently written does not specifically address the situation in which a physician dies during the treatment of a patient; nor does it clearly address the possibility that a physician may retire, move, or have his or her privileges or license to practice medicine revoked or suspended during the physician's treatment of the claimant. I believe that the determination of these issues is better left to legislative enactment, than judicial interpretation.

*Moore, Giles & Matteson, LLP*, by: *Greg Giles*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *Guy Alton Wade*.