SLIP OPINION

Cite as 2016 Ark. 30

# SUPREME COURT OF ARKANSAS

No. CV–15–33

| | |
|---|---|
| MAHMOOD AHMAD, M.D.<br>APPELLANT | Opinion Delivered February 4, 2016 |
| V. | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-13-4704] |
| JOSEPH M. BECK, M.D., CHAIRMAN, ARKANSAS STATE MEDICAL BOARD; AND ARKANSAS STATE MEDICAL BOARD<br>APPELLEES | HONORABLE WENDELL GRIFFEN, JUDGE<br><br>AFFIRMED. |

**HOWARD W. BRILL, Chief Justice**

Appellant Mahmood Ahmad, M.D., appeals an order of the Pulaski County Circuit Court dismissing with prejudice his complaint for declaratory judgment and injunctive relief and his motion for temporary restraining order. For reversal, Dr. Ahmad contends that the circuit court erred in dismissing his complaint and that the circuit court erred in denying, on jurisdictional grounds, his request for a temporary restraining order. We affirm the circuit court's order.

Dr. Ahmad is a physician licensed under the Arkansas Medical Practices Act, Arkansas Code Annotated sections 17-95-201 to -412 (Repl. 2010 & Supp. 2015) (the "Act"). A board certified anesthesiologist, he has practiced medicine in Pulaski County for over fifteen years, specializing in pain management. As part of his practice, Dr. Ahmad regularly writes prescriptions for controlled substances.

Cite as 2016 Ark. 30

The Arkansas State Medical Board (the "Board"), which consists of fourteen members appointed by the Governor, has the authority to promulgate and put into effect rules and regulations as are necessary to carry out the purposes of the Act. Ark. Code Ann. § 17-95-303(2). In addition, pursuant to the Act, the Board may revoke an existing license or impose penalties when a physician has committed any of the acts or offenses defined as "unprofessional conduct." *Id*. § 17-95-409(a).

To understand the issues on appeal in this case, it is necessary to briefly review the procedural history in two separate actions arising from the same set of facts. In November 2012, the Board charged Dr. Ahmad with alleged violations of the Act related to his prescribing controlled substances to patients, his record keeping, and his patient monitoring. After two administrative hearings, in an order entered June 22, 2013, the Board found Dr. Ahmad in violation of the Act and Board regulations 2.4 and 2.6 and ordered him to take certain continuing education courses, undergo a record keeping audit, reimburse the Board for the cost of its investigation, and pay a fine of $500 per count for his violation.[1] On July 5, 2013, Dr. Ahmad filed in the circuit court an administrative appeal of the Board's order. *See Ahmad v. State Medical Board*, Pulaski Cty. Cir. Ct., No. 60CV-13-2691.

On December 3, 2013, while his administrative appeal was pending in the circuit

---

[1]Specifically, the Board found that Dr. Ahmad violated regulation 2.4 in that he prescribed an excessive amount of controlled substances for his patients. The Board also found that Dr. Ahmad violated regulation 2.6 in that he prescribed Schedule medication for pain not associated with malignancy or terminal illness for more than six months and without keeping proper records and monitoring the condition of his patients to justify the ongoing prescribing of the Schedule medication.

court, Dr. Ahmad filed a complaint for declaratory judgment and injunctive relief against the Board and the Board's chairman, Joseph M. Beck, M.D. (collectively referred to as the "Board"). *See Ahmad v. Beck*, Pulaski Cty. Cir. Ct., No. 60CV-13-4704. In his complaint, Dr. Ahmad requested that the circuit court (1) declare that Arkansas Code Annotated section 17-95-704(b)(3)(A) of the Chronic Intractable Pain Treatment Act, Arkansas Code Annotated sections 17-95-701 to -707 ("CIPTA"), and Board regulations 2.4, 2.6, and 19[2] are unconstitutional and therefore null and void; (2) declare that the Board engages in conduct that exceeds its statutory authority in applying regulations 2.4, 2.6, and 19 to disciplinary actions against physicians practicing pain medicine; and (3) enjoin the Board from applying regulations 2.4, 2.6, and 19 to disciplinary hearings.

On January 3, 2014, the Board filed a motion to dismiss the complaint for declaratory and injunctive relief, contending that, because Dr. Ahmad's exclusive remedy was an administrative appeal of the Board's June 22, 2013 order, his complaint for declaratory and injunctive relief was barred as a matter of law. The Board asserted that Dr. Ahmad had the opportunity in the June 2013 administrative hearings to raise his constitutional arguments and to obtain rulings on those arguments. The Board added that Dr. Ahmad had the opportunity to obtain judicial review of all rulings contained in the Board's June 22 order. Dr. Ahmad responded and argued that his complaint complied with the requirements of Arkansas Code Annotated section 25-15-207 (Repl. 2004) of the Arkansas Administrative Procedure Act. He also argued that, because he had no genuine opportunity for relief, the circuit court had

---

[2]Regulation 19 governs pain-management programs.

jurisdiction over his complaint pursuant to the declaratory-judgment statute, Arkansas Code Annotated section 16-111-104 (Repl. 2006). Finally, he argued that it would be futile to raise his constitutional issues in his administrative appeal to the circuit court because he did not raise those issues in the administrative hearings before the Board.

On September 4, 2014, Ahmad filed a motion for temporary restraining order in which he asked the circuit court to issue an order prohibiting the Board from pursuing any administrative action against him in separate cases pending against him until both his administrative appeal and his declaratory and injunctive action were concluded. On September 30, 2014, after a hearing on the complaint for declaratory and injunctive relief and the motion for temporary restraining order, the circuit court entered an order granting the Board's motion to dismiss, denying Dr. Ahmad's motion for a restraining order, and dismissing the complaint with prejudice.[3] The circuit court noted in its order that Dr. Ahmad's complaint for declaratory and injunctive relief was filed on December 10, 2013, which was after the June 2013 administrative hearings; that in addition to filing the complaint, Dr. Ahmad had also filed an administrative appeal of the Board's disciplinary action against him; and that the administrative appeal remained pending. The circuit court ruled that Dr. Ahmad was barred from seeking declaratory relief on the constitutionality of

[3]At the hearing, the circuit court first heard the complaint for declaratory and injunctive relief and the motion for temporary restraining order. Subsequently, the circuit court heard Dr. Ahmad's administrative appeal and affirmed the Board's decision. Although Dr. Ahmad appealed the circuit court's decision in the administrative appeal to the court of appeals, the appeal was dismissed on Dr. Ahmad's motion on March 11, 2015. *See Ahmad v. Beck*, Ark. Ct. App., No. CV-15-31.

SLIP OPINION

SLIP OPINION

Board regulations 2.4, 2.6, and 19 and that he was required to exhaust his administrative remedies before seeking declaratory relief from the court. Dr. Ahmad now appeals the order dismissing with prejudice his complaint for declaratory judgment and injunctive relief and his motion for temporary restraining order.

To dispose of this appeal, we must answer the following question: Under the facts of this case, was Dr. Ahmad permitted to file a separate declaratory action to raise claims that he could have raised in the proceedings before the Board? The circuit court answered that question in the negative. We consider questions of law de novo. *See Tucker v. Sullivant*, 2010 Ark. 170, 370 S.W.3d 812.

Dr. Ahmad contends that, even though his administrative appeal was pending, he was entitled to bring a separate action for declaratory judgment pursuant to Arkansas Code Annotated section 25-15-207 of the Arkansas Administrative Procedure Act and Arkansas's declaratory-judgment statute, Ark. Code Ann. § 16-111-104. Section 25-15-207 states, in relevant part,

> (a) The validity or applicability of a rule may be determined in an action for declaratory judgment if it is alleged that the rule, or its threatened application, injures or threatens to injure the plaintiff in his or her person, business, or property.
> . . . .
>
> (d) A declaratory judgment may be rendered whether or not the plaintiff has requested the agency to pass upon the validity or applicability of the rule in question.

Section 16-111-104 states,

> Any person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance,

contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

The Board responds that the exhaustion–of–administrative–remedies doctrine applies; therefore, Dr. Ahmad was not entitled to bring a separate declaratory action. The doctrine of exhaustion of administrative remedies provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. *Hotels.com, LP v. Pine Bluff Advertising & Promotion Comm'n*, 2013 Ark. 392, 430 S.W.3d 56; *see also McGhee v. Ark. State Bd. of Collection Agencies*, 368 Ark. 60, 243 S.W.3d 278 (2006) (stating that a basic rule of administrative procedure requires that an agency be given the opportunity to address a question before a complainant resorts to the courts). The failure to exhaust administrative remedies is grounds for dismissal. *McGhee*, 368 Ark. 60, 243 S.W.3d 278.

Declaratory-judgment actions are intended to supplement, rather than replace, ordinary actions. *Rehab Hosp. Servs. Corp. v. Delta-Hills Health Sys. Agency, Inc.*, 285 Ark. 397, 687 S.W.2d 840 (1985). Accordingly, litigants must exhaust their administrative remedies before seeking a declaratory judgment. *Hankins v. McElroy*, 313 Ark. 394, 855 S.W.2d 310 (1993); *see also Rehab Hosp. Servs. v. Delta-Hills*, 285 Ark. at 399, 855 S.W.2d at 841–42 ("It seems to be now a recognized doctrine that requires administrative relief to be sought before resorting to declaratory procedure, wherever administrative relief is afforded and this requirement is not one merely requiring the initiation of administrative procedure, *but the administrative procedure must be pursued to its final conclusion before resort may be had to the court for declaratory relief.*") (quoting W. Anderson, *Actions for Declaratory Judgments*, § 204, at

433 (1951)).

In the instant case, Dr. Ahmad did not pursue the administrative procedure to its final conclusion. Rather, he filed a separate complaint for declaratory and injunctive relief while administrative proceedings were pending.

Still, there are exceptions to the exhaustion-of-administrative-remedies doctrine. *Hotels.com*, LP, 2013 Ark. 392, 430 S.W.3d 56. For example, exhaustion of remedies is not required when no genuine opportunity for adequate relief exists or when irreparable injury will result if the complaining party is compelled to pursue administrative remedies. *Id*. Exhaustion of remedies is also not required when an administrative appeal would be futile. *Id*.

Citing *Arkansas Department of Human Services v. Howard*, 367 Ark. 55, 238 S.W.3d 1 (2006), Dr. Ahmad claims that the futility exception applies to his case. In *Howard*, homosexual plaintiffs challenged a regulation promulgated by the Child Welfare Agency Review Board, which provided that no person could serve as a foster parent if any adult member of that person's household was a homosexual. The defendants argued that the plaintiffs failed to exhaust their administrative remedies because they did not challenge the regulation before the board prior to filing suit for declaratory judgment. This court disagreed:

> Appellees, and all other similarly situated individuals, are completely barred from becoming foster parents because of this regulation. Much like in [*McCuen Burial Assocs. v. Arkansas Burial Ass'n Board*, 298 Ark. 572, 769 S.W.2d 415 (1989)], it is obvious that the application of the regulation injures all prospective foster parents who are (1) homosexual or (2) have an adult homosexual living in the prospective foster home. Thus, Appellees were not required to exhaust all administrative remedies prior to pursuing their cause of action against DHS and the Board. *See* Ark. Code Ann. § 25-15-207; *Cummings* [*v. Big Mac Mobile Homes, Inc.*], 335 Ark. 216, 980 S.W.2d 550

[(1998)]; *Ford v. Arkansas Game & Fish Comm'n*, 335 Ark. 245, 979 S.W.2d 897 (1998); *McEuen*, 298 Ark. 572, 769 S.W.2d 415; *Barr* [*v. Ark. Blue Cross & Blue Shield*], 297 Ark. 262, 761 S.W.2d 174 (1988).

*Howard*, 367 Ark. at 61, 238 S.W.3d at 5.

Because the regulation at issue in *Howard* completely barred the plaintiffs from becoming foster parents, any attempt to pursue administrative remedies would have been futile. In contrast, the statutes and regulations that Dr. Ahmad seeks to challenge in this case do not completely bar any class of physicians from a certain act. Here, Dr. Ahmad *failed to pursue* the administrative remedy afforded to him. In short, Dr. Ahmad's conundrum is of his own making. "Litigants may not, by refusing or neglecting to submit issues . . . to administrative agencies, bypass them and call upon the courts to determine matters properly determinable originally by the agencies." 2 Am. Jur. 2d *Administrative Law*, § 452.[4] We hold that, under the facts of this case, Dr. Ahmad was not permitted to file a separate declaratory action to raise claims that he could have raised in the proceedings before the Board.

Finally, Dr. Ahmad contends that the circuit court erred in denying, on jurisdictional grounds, his request for a temporary restraining order. In his motion, Dr. Ahmad sought an order prohibiting the Board from pursuing any administrative action against him in several separate cases (or any case) until his administrative appeal and the declaratory and injunctive action were concluded. The Board responded that the circuit court was without jurisdiction

---

[4]In this case, it appears that Dr. Ahmad's attorney failed to raise the constitutional issues at the administrative hearings before the Board. We have long held clients responsible for the acts of omission or commission of their attorneys. *Scarlett v. Rose Care, Inc.*, 328 Ark. 672, 944 S.W.2d 545 (1997); *Truhe v. Grimes*, 318 Ark. 117, 884 S.W.2d 255 (1994).

to enjoin the Board from performing the duties delegated to it by statute. The circuit court agreed and denied the motion.

Generally, courts are without jurisdiction to enjoin agencies from performing duties delegated to them by statute. *Ark. Prof'l Bail Bondsman v. Frawley*, 350 Ark. 444, 88 S.W.3d 418 (2002). In *Toan v. Falbo*, 268 Ark. 337, 595 S.W.2d 936 (1980), this court noted that the court has jurisdiction to enjoin state agencies from acts that are ultra vires or beyond the scope of their authority and that an agency may be enjoined if it is about to perform an act in bad faith, arbitrarily, capriciously, wantonly, or injuriously. The court also noted that, on the other hand, a court is "without jurisdiction to issue an injunction preventing a board or commission from hearing a case where the board or commission has jurisdiction." *Id*. at 338, 595 S.W.2d at 938. Because the Board has jurisdiction to initiate administrative proceedings against Dr. Ahmad, *see* Ark. Code Ann. § 17-95-410, the circuit court did not err in denying Dr. Ahmad's motion for temporary restraining order on jurisdictional grounds.

Affirmed.

Special Justice CURTIS HITT joins.

HART, J., concurs.

BAKER, J., not participating.

**JOSEPHINE LINKER HART, Justice, concurring.** I concur in the result reached by this court, but only because I am constrained by the doctrine of stare decisis. But for this court's decision in *Ford v. Arkansas Game & Fish Comm'n*, 335 Ark. 245, 979 S.W.2d 897 (1998), I would be writing a dissent.

SLIP OPINION

It has been recited more than 800 times in Arkansas appellate court decisions that the first rule of statutory construction is to read the statute just as written, giving each word its customary meaning. *See, e.g.*, *Hinton v. State*, 2015 Ark. 479, ___ S.W.3d ___. The objective of statutory construction is to give effect to the intent of the legislature. *Id.* Accordingly, the plain language of Arkansas Code Annotated section 25-15-207(d) (Repl. 2014), which states, "A declaratory judgment may be rendered whether or not the plaintiff has requested the agency to pass upon the validity or applicability of the rule in question," this court is required to reverse the circuit court.

Inexplicably, the *Ford* court chose not to follow the clearly stated intent of the legislature to give an aggrieved party direct access to courts of law where the validity of a rule established by a regulatory agency or commission is at issue. The decision to interpose the "common-law exhaustion of remedies" requirement cannot supersede a statute that clearly creates a new cause of action that is independent of the Arkansas Administrative Procedures Act and its attendant common-law requirements. The plain language of section 25-15-207(d) could not be a clearer statement of legislative intent.

There has been a proliferation of quasi-judicial licensing and governing boards and commissions. They regulate medicine, engineering, building contracting, cosmetology, social work, education, massage therapy, tobacco retailing, alcoholic beverage retailing, embalming—virtually every profession one can imagine. While I have little doubt that these boards and commissions are filled with experts in their particular fields, they generally have no legal training and are not practicing lawyers. Furthermore, I am unaware of any

requirement that the board members or commissioners be trained in constitutional interpretation.

The Arkansas State Medical Board is composed of fourteen members, and all but two are required by statute to be medical professionals. Ark. Code Ann. § 17-95-301 (Repl. 2010). The other two members are supposed to represent "consumers" and persons over 60 years old. *Id*. The statute does not require *any* board members to be lawyers. *Id*. I submit that while the board may be composed of many fine physicians, in matters of constitutional law, they are untrained and ill-equipped to decide such matters. While a board's statutory interpretation is afforded deference in matters where its unique expertise comes into play, courts of law always have the last word. *Ark. State Med. Bd. v. Bolding*, 324 Ark. 238, 920 S.W.2d 825 (1996).

The American version of constitutional democracy requires each branch to respect the separation of powers. The *Ford* decision is but one example of how this court has, at times, intruded upon the exclusive province of the legislature. I lament that this court did not take the opportunity to correct this serious misstep and overrule a patently wrong decision and its progeny.

*Samuel A. Perroni* and *Tim Dudley*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Colin R. Jorgensen*, Ass't Att'y Gen., for appellee.