SLIP OPINION

# SUPREME COURT OF ARKANSAS

**No.** CV-17-183

|  |  |
|---|---|
| ARKANSAS DEPARTMENT OF HUMAN SERVICES<br><br>          APPELLANT<br><br>V.<br><br>BRADLEY LEDGERWOOD, LOUELLA JONES, PEGGY SANDERS, MARCUS STROPE, WINNIE WINSTON, DANA WOLF, AND MICHAEL YARRA<br><br>          APPELLEES | **Opinion Delivered:** November 9, 2017<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-17-442]<br><br>HONORABLE WENDELL GRIFFEN, JUDGE<br><br>AFFIRMED. |

**JOHN DAN KEMP, Chief Justice**

Appellant Arkansas Department of Human Services (DHS) has filed an interlocutory appeal from an order entered by the Pulaski County Circuit Court granting a motion for temporary restraining order (TRO) in favor of appellees Bradley Ledgerwood, Louella Jones, Peggy Sanders, Marcus Strope, Winnie Winston, Dana Wolf, and Michael Yarra. For reversal, DHS argues that the circuit court abused its discretion in finding that appellees demonstrated a likelihood of success on the merits of their claims and that they would suffer irreparable harm in the absence of a TRO. We affirm.

I. *Facts*

Appellees, who are low-income individuals with profound physical disabilities, are the beneficiaries of the ARChoices in Homecare Program[1] ("ARChoices" or "waiver

---

[1] The ARChoices in Homecare Program is a home-based and community-based waiver that was approved under the authority of 42 U.S.C. § 1915(c) by the Centers for

program"), a state Medicaid program that provides home–based and community–based services to eligible and enrolled participants. Appellees receive these services through a program called Attendant Care that pays caregivers to assist appellees with daily tasks such as bathing, dressing, preparing food, eating, ambulating, toileting, taking medication, shopping, and maintaining personal care, nutrition, and hygiene.

For approximately seventeen years, DHS determined a beneficiary's number of attendant-care hours based on the professional discretion of a DHS registered nurse who assessed the beneficiary. Under this specific assessment, known as ArPath, DHS nurses determined that appellees required attendant care with a maximum of fifty-six hours per week. DHS later planned to implement a new reassessment system, known as the Resource Utilization Groups system ("RUGs"), that was based solely on a set of complex computer algorithms. These algorithms took patient information gathered from a 286-question ArPath assessment and placed the beneficiary into one of twenty-three RUGs tiers. Each RUGs tier is associated with an allocation of attendant-care hours that is determined by DHS. These possible allocations of weekly attendant-care hours span from six hours to eighty-one hours. Once an individual is assigned to a RUGs tier, DHS nurses do not have the discretion to move a beneficiary to another tier based on his or her specific needs.

In August 2015, DHS promulgated a 242-page packet, which included a Notice of Rulemaking along with a proposed RUGs rule and final RUGs rule. Dawn Stehle, director of the Division of Medical Services, issued the Notice of Rulemaking, stating,

Medicare & Medicaid Services on November 19, 2015, and became effective on January 1, 2016. ARChoices is administered by DHS's Division of Aging and Adult Services under the authority of the DHS, the Medicaid agency for the State of Arkansas.

> Effective January 1, 2016, [DHS] is renewing the ElderChoices 1915(c) HCBS waiver. The renewal combines the ElderChoices and Alternatives for Adults with Physical Disabilities (AADP) waivers into one waiver to be called the ARChoices in Homecare waiver covering participants 21 and older with a physical disability and individuals aged 65 and older. Effective January 1, 2016, the Department is also increasing the rate for Personal Care Services from $4.19 to $4.50 per 15 minute unit. The estimated annualized budget impact of the rate increase for the State Plan Personal Care Services is $11,439,689.
>
> The proposed policy is available for review at the Division of Medical Services . . . . You may also access it on the Medicaid website (www.medicaid.state.ar.us) and download it from the "Proposed Rules for Public Comment" section of the Website's *General* menu. . . . All comments must be submitted in writing, at the above address, no later than September 1, 2015.

On December 1, 2015, Craig Cloud, director of the Division of Aging and Adult Services, sent a letter to the waiver-program beneficiaries, stating,

> Effective January 1, 2016, the ElderChoices waiver program will be renamed ARChoices in Homecare. Your services and provider will remain the same way. When your reassessment is due, the DAAS Nurse will explain how your services will have a new name and will explain new options and choices available to you under ARChoices.
>
> For now, just know that the name of your current services is being changed to ARChoices in Homecare. You will continue to receive the same services[,] and the DAAS Nurse will provide more information at your next reassessment.

On January 26, 2017, appellees filed a complaint, seeking a declaratory judgment challenging the validity of DHS's new RUGs rule. They alleged, *inter alia*, that the RUGs rule did not substantially comply with the Administrative Procedure Act ("APA"), codified at Arkansas Code Annotated sections 25-15-201 to -219 (Repl. 2014 & Supp. 2015), and sought injunctive relief. Specifically, they alleged that "the unlawful switch to the computer algorithm reduced [appellees'] Attendant Care hours by an average of 43%, with one [appellee's] cut reaching 56%." Appellees also made the following factual allegations concerning their specific health histories. Appellee Ledgerwood, diagnosed with cerebral palsy, requires attendant-care services to perform all life activities. Until 2016, he received


fifty-six weekly attendant-care hours, and in February 2016, DHS reduced his hours to thirty-two weekly hours.  Appellee Jones, diagnosed with cerebral palsy, multiple sclerosis, hiatal hernia, cardiac arrhythmia, obesity, and an acute gastric ulcer, received forty weekly attendant-care hours. From April to August 2016, her weekly attendant-care hours were reduced to nineteen. Appellee Sanders, who was diagnosed with congestive heart failure, atrial fibrillation, coronary-artery disease, stage three kidney disease, hypothyroidism, osteoarthritis, gout, depression, anxiety, anemia, allergies, urinary incontinence, and chronic pulmonary disease, received forty-eight weekly attendant-care hours; however, from April to November 2016, DHS reduced her attendant-care hours to twenty-one. Appellee Strope, who was diagnosed with incomplete tetraplegia after breaking his neck and is confined to a bed, had been authorized fifty-six weekly attendant-care hours. From April to September 2016, he received approximately thirty-two hours after his reassessment. Appellee Winston, who suffers severe spinal conditions, including bulging discs, fused vertebrae, and spinal lesions, was diagnosed with neuropathy and arthritis and suffers from severe pain.  She had received forty-four weekly attendant-care hours, but after her reassessment, DHS reduced her hourly allotment to twenty-two hours. Appellee Wolf suffered serious injuries, resulting in quadriplegia after a car accident at the age of fifteen. He received fifty-six attendant-care hours, but from April to August 2016, DHS reduced his attendant-care hours to thirty-seven. Appellee Yarra, who was injured in a car accident, had one leg amputated, has severe bladder problems, has sustained nerve damage, and suffers from chronic infections. Confined to a wheelchair, he received forty-two hours, but DHS reduced those hours to thirty-three

from September 2016 to January 2017. Appellees claim that DHS's reduction in their attendant-care weekly hours will be insufficient to meet their care needs.

On January 31, 2017, appellees filed a motion for temporary restraining order and preliminary injunction. In their brief in support, appellees contended that DHS's switch from the nurses' assessment to RUGs "[a]s of May 1, 2016, the last date for which DHS has data, the shift to the RUGs system had resulted in cuts for a [sic] 47% of ARChoices beneficiaries, increases for 43%, and no change for the remainder[,]" but that they, "the most acute beneficiaries[,] have been hit the hardest." Appellees claimed that they (1) had been forced to go without food, (2) remained in soiled clothes or have gone without bathing, (3) missed key exercises, treatments, or turnings, (4) faced an increased risk of falling, (5) have become more isolated in their homes; (6) have suffered worsened medical conditions directly due to a lack of care; and (7) have considered moving to nursing homes. Appellees concluded that they had met the requirements for a TRO in proving that they faced irreparable injury and were likely to prevail on the merits of their claims. In their prayer for relief, they requested, *inter alia*, a temporary restraining order that would (1) enjoin DHS from conducting reassessments on the appellees and reducing their attendant-care hours under RUGs and (2) require DHS to maintain or restore appellees' attendant-care hours to the amounts determined as of December 31, 2015.

The circuit court held a hearing on appellees' motion for TRO and preliminary injunction. After receiving evidence and hearing testimony and closing arguments, the circuit court made the following ruling from the bench:

> [Appellees] . . . argue they suffered and will continue to suffer irreparable harm in the absence of a temporary restraining order.

5

SLIP OPINION

. . . .

The court finds that the plaintiffs have presented evidence that shows there's a substantial likelihood they will be able to succeed, that the proposed rule was not given with notice with regard to the specific nature and significance of the change in assessment methodology.

. . . .

The court makes this recitation [of the evidence before it] to indicate the basis for its conclusion that [appellees] have demonstrated a substantial likelihood of success on the merits as to whether or not the notice required under Arkansas Code 25-15-204 has been adopted and filed in substantial compliance so as to be valid.

The second aspect or the second element that [appellees] must prevail on in order to obtain a temporary restraining order is to demonstrate irreparable harm, that irreparable harm will ensue as a result of the alleged conduct. [Appellees] alleged that they have suffered and will continue to suffer irreparable harm in the absence of a temporary restraining order.

In this regard, the court finds that the [appellees] have met their burden of proof. . . . Based upon the testimony of Ms. Jones with regard to the effect of RUG[s] methodology, the court finds that not only does she [appellee Jones] suffer from conditions that make it evident that she would likely suffer irreparable harm, but based upon the affidavits of the other plaintiffs, it appears to the court that those plaintiffs simply suffer from conditions which would subject them to irreparable harm if the temporary restraining order is not issued.

. . . .

Thus, the court finds that the [appellees] have met their burden of proof on the issue of likelihood of success on the merits and irreparable harm.

. . . .

The court does, however, pursuant to [appellees'] motion, grant the motion for temporary restraining order and enjoin the defendant from conducting reassessments on the [appellees] under the RUGs system pending the existence of the temporary restraining order.

Subsequently, on February 7, 2017, the circuit court entered an order granting appellees' motion for temporary restraining order and temporarily enjoining DHS from conducting annual reassessments on appellees and from reducing their attendant-care hours.

In its order, the circuit court found that (1) exhaustion of administrative remedies was not required, as irreparable injury would result if appellees were compelled to pursue administrative remedies, and an administrative appeal would be futile; (2) appellees have suffered and will continue to suffer irreparable harm in the absence of a TRO, as they have suffered harm to their physical and emotional well-being from the reduction in attendant-care services; and (3) appellees have demonstrated a likelihood of success on the merits. The circuit court enjoined DHS from conducting reassessments on appellees and reducing their attendant-care hours under RUGs, pending a hearing on the preliminary injunction. DHS now brings this interlocutory appeal from the February 7, 2017 order pursuant to Rule 2(a)(6) of the Arkansas Rules of Appellate Procedure–Civil. This court granted DHS's stay of the circuit court proceedings pending our decision on this interlocutory appeal.

## II. *Temporary Restraining Order*

On appeal, DHS contends that the circuit court abused its discretion in granting appellees' motion for temporary restraining order and enjoining it from reassessing appellees by using the RUGs methodology. Specifically, DHS argues that the circuit court abused its discretion in finding that appellees (1) demonstrated a likelihood of success on the merits and (2) will suffer irreparable harm in the absence of a TRO.

Rule 65 of the Arkansas Rules of Civil Procedure governs the issuance of TROs. In determining whether to issue a TRO pursuant to Rule 65, a circuit court must consider two issues: (1) whether irreparable harm will result in the absence of an injunction or restraining order, and (2) whether the moving party has demonstrated a likelihood of success on the merits. *Baptist Health v. Murphy*, 362 Ark. 506, 209 S.W.3d 360 (2005) (per curiam).

The issuance of a temporary restraining order is a matter addressed to the sound discretion of the circuit court. *Three Sisters Petroleum, Inc. v. Langley*, 348 Ark. 167, 72 S.W.3d 95 (2002). We will not reverse the circuit court's ruling unless there has been an abuse of discretion. *Doe v. Ark. Dep't of Human Servs.*, 357 Ark. 413, 182 S.W.3d 107 (2004). In reviewing the circuit court's findings, we give due deference to the circuit court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Monticello Healthcare Ctr., LLC v. Goodman*, 2010 Ark. 339, 373 S.W.3d 256.

## A. Justiciability

As an initial matter, DHS urges this court to reverse the circuit court's TRO and to dismiss the complaint because the claims are not justiciable. DHS contends that the controversy is not ripe for judicial determination because any claims are speculative and contingent on the possibility of a future decrease in attendant-care hours. Appellees respond that their claims are ripe because they belong to a class of persons affected by the RUGs system.

Our declaratory-judgment statute provides that "[a]ny person. . . whose rights, status or other legal relations are affected by a statute. . . may have determined any question of construction or validity arising under the. . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder." Ark. Code Ann. § 16-111-102 (Repl. 2016).

In this instance, the circuit court has not ruled on appellees' underlying declaratory-judgment action, but it granted appellees' motion for TRO. In doing so, the circuit court found that appellees suffered irreparable harm and demonstrated a likelihood of success on

the merits of their claims, in part, because DHS had reduced appellees' attendant-care hours. "A party thus is not required to prove his [or her] case in full at a preliminary-injunction hearing." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Accordingly, we conclude that appellees present a justiciable controversy in this instance. For these reasons, we reject DHS's argument.

## B. Irreparable Harm

DHS argues that the circuit court abused its discretion in finding that appellees have suffered irreparable harm in the absence of a TRO.[2] Appellees respond that the circuit court did not abuse its discretion in concluding that appellees would suffer irreparable harm because, by using RUGs, DHS's reduction of their hours caused them to go without needed care.

This court has held that "[e]ssential to the issuance of a temporary restraining order is a finding that a failure to issue it will result in irreparable harm to the applicant." *Kreutzer v. Clark*, 271 Ark. 243, 244, 607 S.W.2d 670, 671 (citing Ark. R. Civ. P. 65). The prospect of irreparable harm or lack of an otherwise adequate remedy is the foundation of the power to issue injunctive relief. *Wilson v. Pulaski Ass'n of Classroom Teachers*, 330 Ark. 298, 954 S.W.2d 221 (1997). Harm is normally considered irreparable only when it cannot be adequately compensated by money damages or redressed in a court of law. *Three Sisters Petroleum, Inc.*, 348 Ark. 167, 72 S.W.3d 95.

---

[2] In its brief, DHS presents (1) likelihood of success on the merits and (2) irreparable harm in that order. We first address the issue of irreparable harm.

In the case at bar, the circuit court found that appellees "have suffered and will continue to suffer irreparable harm in the absence of a TRO. [Appellees] have suffered harm to their physical and emotional well-being from [DHS's] reduction in Attendant Care services." In support of its ruling, the court emphasized the testimony of Louella Jones in stating,

> Plaintiff Jones . . . contends that she will undergo assessment for care under RUGs within the coming week. Jones testified that in 2016 she underwent RUGs reassessment which resulted in a decrease in her Attendant Care hours from 40 hours per week to 19 hours per week. Jones testified that she is not able to pay out of pocket for additional care, and does not have family or friends residing nearby. Jones, who suffers from cerebral palsy, multiple sclerosis, a heart condition, bladder incontinence, and has trouble walking, further testified that when her Attendant Care hours were reduced[,] she suffered difficulties with cleanliness, she had to remain in her urinary waste, soiled clothing and diapers, and that she suffered skin irritation as a result of that. Jones also stated that she had an increased fear of falling during that time, and that she went without food because she was unable to prepare her own meals.

The circuit court also noted that the "[a]ffidavits of the remaining [appellees] mirrored Jones's experience and concerns" and that they "have been forced to go without food, remain in soiled clothes or go without bathing, miss key exercises, treatments, or turnings, face increased risk of falling, be more isolated in their homes, suffer worsened medical conditions directly due to the lack of care, and consider moving into nursing homes."

We agree with the circuit court's finding that appellees have suffered and will continue to suffer irreparable harm in the absence of a TRO. Here, appellees have sustained injuries for which money damages are not available. Based on their sworn affidavits, appellees admit that they have suffered lack of food, have remained in soiled clothes, have gone without bathing, have missed treatments and turnings, face increased risk of falling, have become more isolated, and have suffered worsened medical conditions as a result of

their lack of care provided by DHS. Given this evidence, appellees have provided a sufficient showing of irreparable harm to justify the circuit court's issuance of a temporary restraining order. Based on our standard of review, we conclude that the circuit court properly found irreparable harm in this instance.

## C. Likelihood of Success on the Merits

DHS argues that the circuit court abused its discretion in finding that appellees demonstrated a likelihood of success on the merits. Specifically, DHS contends that appellees' claims are not ripe for our consideration because they do not constitute a justiciable controversy, that it substantially complied with section 25-15-204, and that appellees had actual knowledge of the rule.

Appellees contend that the circuit court did not abuse its discretion in concluding that they were likely to succeed on the merits because (1) they belonged to the class of persons affected by the RUGs system; (2) the circuit court had ample evidence that DHS did not substantially comply with section 25-15-204; and (3) actual knowledge of the rule is irrelevant.

This court has held that, "to justify a grant of preliminary injunction relief, a plaintiff must establish that it will likely prevail on the merits at trial." *W.E. Long Co. v. Holsum Baking Co.*, 307 Ark. 345, 351, 820 S.W.2d 440, 443 (1991) (citing *Smith v. Am. Trucking Ass'n*, 300 Ark. 594, 781 S.W.2d 3 (1989)). The test for determining the likelihood of success is whether there is a reasonable probability of success in the litigation. *Custom Microsystems Inc. v. Blake*, 344 Ark. 536, 42 S.W.3d 453 (2001). Such a showing "is a benchmark for issuing a preliminary injunction." *Id.* at 542, 42 S.W.3d at 457–58. The

appellate court will not delve into the merits of the case further than is necessary to determine whether the circuit court exceeded its discretion in granting the injunction. *Villines*, 340 Ark. 319, 11 S.W.3d 516.

In the present case, the gravamen of appellees' complaint and underlying action seeking declaratory judgment is that the RUGs rule is invalid and violates section 25-15-204(h). In their complaint, appellees alleged that DHS failed to provide adequate notice of rulemaking when it promulgated changes to the waiver program in 2015. Appellees relied on section 25-15-204, which provides in pertinent part:

> (a) Prior to the adoption, amendment, or repeal of a rule, the agency shall:
> (1)(A)(i) Give at least thirty (30) days' notice of its intended action.
> (ii) The thirty-day period shall begin on the first day of the publication of notice.
> (B) The notice shall include:
> (i) A statement of the terms or substance of the intended action or a description of the subjects and issues involved; and
> (ii) The time, location, and manner in which an interested person may present his or her position on the intended action of the agency or on the issues related to the intended action of the agency.
> (C) The notice shall be mailed to:
> (i) A person specified by law; and
> (ii) A person who has requested advance notice of rule-making proceedings.
> (D) Unless otherwise provided by law, the notice shall be published:
> (i) In a newspaper of general daily circulation for three (3) consecutive days and, when appropriate, in those trade, industry, or professional publications that the agency may select; and
> (ii) By the Secretary of State on the Internet for thirty (30) days under § 25-15-218;
> (2)(A) Afford all interested persons reasonable opportunity to submit written data, views, or arguments, orally or in writing.
> . . . .
> (h) A rule adopted after June 30, 1967, is not valid unless adopted and filed in substantial compliance with this section.

In their motion for TRO, appellees claimed that they would have a likelihood of success on the merits of their claims because, "in violation of the Administrative Procedures [sic] Act's rule-making provisions, DHS has adopted and implemented a policy of general

applicability and future effect—the RUGs system—while failing to provide proper notice, meaningful opportunity for public comment, reasoned consideration of the issues involved, and legislative oversight."

With section 25-15-204 in mind, the circuit court found that the appellees "have presented evidence that shows that there is a substantial likelihood that they will be able to succeed on the merits of the underlying action." This evidence included the following exhibits: (1) appellees' exhibit 2, a DHS notice entitled "Notice of Rule Making," dated December 1, 2015, that omits any mention of a proposed rule implementing the new RUGs methodology; (2) appellees' exhibit 3, a letter prepared by Craig Cloud, director of DHS's Division of Aging and Adult Services, in which he states that, effective January 1, 2016, "the name of your current services is being changed to ARChoices in Homecare[,] [and] [y]ou will continue to receive the same services; and the DAAS Nurse will provide more information at your next reassessment;" (3) appellees' exhibit 4, a report of the administrative hearing of the Rules Subcommittee of the Arkansas Legislative Council; and (4) appellees' exhibit 5, a recording of a December 15, 2015 subcommittee hearing during which DHS sought legislative approval of the proposed rule with no reference to RUGs or the changes in the ARChoices assessment methodology. Additionally, at the TRO hearing, the circuit court heard Cloud's testimony that DHS's proposed rule was submitted to the public and that the proposed rule and policy manual mentions RUGs; however, Cloud admitted that there was no mention of RUGs in DHS's Notice of Rule Making.

Based on the evidence presented at the TRO hearing, we agree with the circuit court's finding that appellees, as the moving party, have demonstrated a likelihood of success

on the merits. Without delving into the underlying merits of appellees' ongoing claims, it appears that they have demonstrated a substantial likelihood of success on the merits that, by failing to provide proper notice, DHS did not substantially comply with section 25-15-204 in promulgating the new RUGs methodology. Thus, we hold that the circuit court did not abuse its discretion in finding that appellees have demonstrated a likelihood of success on the merits.

### III. *Exhaustion of Remedies*

Finally, DHS argues in its brief that appellees should have pursued the exhaustion-of-remedies doctrine before filing an action in the circuit court. Citing Arkansas Code Annotated section 25-15-207(d) (Repl. 2014), appellees submit that they were not required to exhaust their administrative remedies before seeking a declaratory order from the court.

Generally, declaratory-judgment actions are intended to supplement, rather than replace, ordinary actions. *Ahmad v. Beck*, 2016 Ark. 30, 480 S.W.3d 166. Accordingly, litigants must exhaust their administrative remedies before seeking a declaratory judgment. *Id.*, 480 S.W.3d 166. Still, there are exceptions to the exhaustion-of-administrative-remedies doctrine. *Id.*, 480 S.W.3d 166. For example, exhaustion of remedies is not required when no genuine opportunity for adequate relief exists or when irreparable injury will result if the complaining party is compelled to pursue administrative remedies. *Id.*, 480 S.W.3d 166. Exhaustion of remedies is also not required when an administrative appeal would be futile. *Id.*, 480 S.W.3d 166.

Here, in its order, the circuit court ruled that "[e]xhaustion of administrative remedies is not required, as irreparable injury will result if the [appellees] are compelled to

pursue administrative remedies, and an administrative appeal would be futile." We agree with the circuit court's ruling for two reasons. First, any irreparable harm to appellees warrants application of the futility exception set forth in our exhaustion-of-remedies case law. Second, Arkansas Code Annotated section 25-15-207(d) provides appellees the statutory scheme for seeking a declaratory judgment in lieu of pursuing the exhaustion of remedies. That statute provides that "[a] declaratory judgment may be rendered whether or not the plaintiff has requested the agency to pass upon the validity or applicability of the rule in question." Ark. Code Ann. § 25-15-207(d). Based on our review of this statute, we conclude that the plain language offers appellees the option of pursuing a declaratory judgment as they have done in this instance.

Therefore, we hold that the circuit court did not abuse its discretion in granting appellees' motion for temporary restraining order. Accordingly, we affirm.

Affirmed.

*David Sterling* and *Richard Rosen*, Office of Chief Counsel, for appellant.

*Kevin De Liban*, Legal Aid of Arkansas, West Memphis; and *Amy Pritchard*, Legal Aid of Arkansas, Jonesboro, for appellees.