John Dan Kemp, Chief Justice, dissenting.
I agree with the majority's decision to dismiss DHS's appeal of the temporary restraining order as moot. I disagree with the majority's decision to reverse the circuit court's finding of contempt against DHS.
The majority mischaracterizes the circuit court's decision to hold "DHS in contempt for violating its permanent injunction order because the agency did not provide prior notice and opportunity for public comment." The majority then holds that "DHS ... 'properly promulgated' the emergency rule" under Arkansas Code Annotated section 25-15-204(c) (Repl. 2017)-an emergency promulgation process that requires neither notice nor public comment.
The key question is not whether DHS properly promulgated an emergency rule, but whether DHS should have promulgated an emergency rule at all. In my view, the circuit court correctly found DHS in contempt because the agency purposely promulgated an emergency rule implementing the exact RUGs methodology from which it had been permanently enjoined. For this reason, I respectfully dissent in part.
I. Relevant Facts
The following facts are largely omitted from the majority opinion but are crucial to an understanding of this case. In Arkansas Department of Human Services v. Ledgerwood , 2017 Ark. 308, 530 S.W.3d 336, this court unanimously affirmed the circuit court's order enjoining DHS from assessing patients and reducing their attendant-care hours under its new RUGs methodology. After this court's decision, the parties filed cross-motions for summary judgment.
On May 14, 2018, the circuit court entered an order finding that DHS "failed to properly promulgate [DHS's] proposed rule [that implemented its new assessment system]" and "permanently enjoined [DHS] from using the RUGs methodology to determine attendant-care hours unless or until [the rule] is properly promulgated." That day, DHS issued a public statement that it would "promptly seek emergency promulgation of modified ARChoices rules that address the Judge's concerns, which would allow us to continue the program."
On May 17, 2018, DHS presented to the Arkansas Legislative Council Executive Subcommittee an emergency rule with an identical, algorithm-based RUGs methodology. In a document entitled "Justification for Emergency Rule," Rose Naff, director of DHS's Division of Medical Services, stated that "this rule is required to be promulgated on an emergency basis to prevent imminent peril to the public health, safety, and welfare and that adopting this emergency rule is necessary to avoid the potential loss of federal funding or certification." The executive subcommittee approved the emergency rule.
The next day, on May 18, DHS filed a notice of compliance with the circuit court's order. DHS asserted that "to address the deficiencies found by the court in the promulgation process, as well as to be capable of continuing operations of the ARChoices program, while complying with *917 the court's order," it had filed an emergency rule pursuant to the Administrative Procedure Act, codified at Arkansas Code Annotated section 25-15-204(c).
Ledgerwood then moved for a temporary restraining order and for contempt. Ledgerwood contended that DHS had violated the circuit court's order because its "emergency rulemaking [was] a willful violation of the May 14, 2018 order" and that "the RUGs methodology implemented pursuant to emergency rulemaking was not 'properly promulgated.' "
The circuit court conducted a hearing on the matter. From the bench, the circuit court stated,
[W]hat has been missing from the agency's presentation is any evidence that the agency has not assessed since January 2017 persons for attendant care or has been unable to assess persons for attendant care since January 2017 or that the nurse's assessment process that existed between 2013 and the end of 2016 has been declared unacceptable by the--by CMS [Centers for Medicare and Medicaid Services] or any other entity that would approve Medicaid match.
There is no proof that that was assertion--an assertion was made to the legislative council. There is no proof that the agency made any request of CMS for clarification of this. Put simply, the emergency rule is an emergency only because the agency chose to call it that. It's a manufactured emergency, emergency by design.
One does not accidently fail to promulgate a rule with notice where one has been told that lack of notice violates the Administrative Procedures Act for months.
And so one does not promulgate an, quote, emergency rule to comply with the requirement that the agency not utilize RUGs for determining independent attendant care. That is not an accident. This is on purpose. It is deliberate, calculated, devised. There is another word for it, disobedient.
And the court especially emphasizes this point because the title of the pleading filed on May 18, 2018 is Notice of Compliance with Court Order. The agency filed notice that it was complying with this court's order which permanently enjoined it from using RUGs methodology by promulgating an emergency rule that uses RUGs methodology.
That statement not only begs credulity, it is manifestly preposterous. The court, therefore, grants the motion for contempt and will direct the agency to file its notice not less than seven calendar days from this date as to why it should not be sanctioned for that contempt.
Effective immediately, the proposed promulgating emergency rule is hereby enjoined, not based on any new action. It is enjoined as a deliberate and calculated disobedience of the permanent injunction entered by this court on May 14, 2018 based upon an action that began in January of 2017.
....
The so-called emergency rule is a contrivance aimed at evading the plain meaning of a permanent injunction that this court entered after a year-and-a-half of litigation.
This court knows the meaning of the word, "permanent." In considering the sanctions for contempt, the court will keep that meaning in mind. This concludes this matter.
On June 25, 2018, the circuit court memorialized these findings in its written order:
The question is whether or not the emergency rule promulgated on May 18, *918 based upon a presentation made by the agency on May 17, 2018 is different in substance from the rule that was the subject of this lawsuit in January 2017. The court finds that it is not. The emergency rule relied upon by DHS is plainly an attempt to circumvent the injunction that has been the subject matter of this lawsuit from its inception. There is no proof that DHS requested the Centers for Medicare and Medicaid Services for clarification on whether it could conduct attendant care reassessments as it did before 2016 until DHS complies with the notice and comment requirements of the Arkansas Administrative Procedures Act concerning changing to the RUGs reassessment method.
Put simply, the emergency rule is an "emergency" only because DHS chose to call it that. It is a fabricated and manufactured "emergency" designed by DHS to avoid following the notice and comment requirements [for nonemergency rules] of Arkansas law. That is not an accident. It is purposeful, deliberate, calculated, devised and disobedient of this court's order. The DHS statement that it was complying with this court's order (which permanently enjoined it from using RUGs methodology until it did so pursuant to a rule promulgated in substantial compliance with the notice and public comment requirements for rulemaking in the Administrative Procedures Act) when it promulgated an "emergency rule" that uses RUGs methodology not only begs credulity. It is manifestly preposterous.
Effective May 23, 2018, the challenged "emergency rule" is found to be factually baseless, legally invalid, and the result of deliberate and calculated disobedience and defiance by DHS of the May 14, 2018 permanent injunction entered by this court. Accordingly, and pursuant to its bench ruling, the court hereby grants [Ledgerwood's] motion for temporary restraining order, preliminary injunction and contempt.
The circuit court invalidated the temporary emergency rule and found DHS in contempt of its permanent injunction. For the "willful defiance by DHS of the permanent injunction," the circuit court ordered sanctions.
II. Analysis
Our constitution and case law make it clear that the courts of this state have inherent power to punish a contemnor for contempt not committed in the presence of the court or in disobedience of process. Ark. Const. art. 7, § 26 ; see Carle v. Burnett , 311 Ark. 477, 845 S.W.2d 7 (1993). Contempt may be established when the offending party willfully disobeyed a valid order of a court. Ivy v. Keith , 351 Ark. 269, 92 S.W.3d 671 (2002).
In my view, DHS willfully disobeyed the circuit court's May 14 order in two ways. First, DHS promulgated an emergency rule utilizing the very RUGs methodology from which it had been permanently enjoined. DHS issued a public statement that it would "promptly seek emergency promulgation of modified ARChoices rules that address the Judge's concerns, which would allow us to continue the program." But it did not address those concerns-particularly that the RUGs methodology was, according to the circuit court's May 14, 2018 order, "a clear departure from prior practice of [nurse assessment] having both general applicability and future effect on beneficiaries." Instead of using nonemergency procedures, DHS presented an emergency rule implementing the same RUGs methodology and claimed that a public-health emergency existed for 8,000 beneficiaries of the ARChoices program.
*919 Second, DHS failed to offer any evidence of an "imminent peril to the public health, safety, or welfare" that necessitated an emergency rule pursuant to section 25-15-204(c). At the May 23, 2018 evidentiary hearing on Ledgerwood's motions, Naff testified that, despite signing the emergency-rule justification, she did not know of any facts establishing imminent peril to public welfare by the court's memorandum order, nor did she know of any person or office at DHS who had knowledge of those facts. She testified that the agency would not lose federal funding for current recipients in the program. Additionally, Mark White, the deputy director of the Division of Aging, Adult, and Behavioral Health Services, testified that he was not aware of any request from DHS to CMS to utilize any non-RUGs assessment tool. He testified that he was not aware of any explicit language indicating that a nurse could not assess or allocate care hours.
Based on the record before this court, DHS appears to have circumvented the circuit court's May 14 order by running to the legislature to promulgate its emergency rule. I agree with the circuit court that DHS acted in "purposeful, deliberate, calculated, devised" disobedience of its May 14 order. Therefore, I would affirm the circuit court's finding of contempt.
Hart, J., joins.